UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL EASTERDAY, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USPACK LOGISTICS LLC,<br><br>Defendant. | MOTION DATE: January 15, 2016<br><br>CIVIL ACTION NO.<br>1:15-cv-07559-RBK-AMD |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS**

Shanon J. Carson (*pro hac vice*)
Sarah R. Schalman-Bergen (*pro hac vice*)
Alexandra K. Piazza, NJ Bar No. 010922013
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Harold Lichten (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com

Edward A. Wallace (*pro hac vice*)
Amy E. Keller (*pro hac vice*)
Wexler Wallace LLP
55 W. Monroe St. Ste. 3300
Chicago, IL 60603
Telephone: (312) 346-2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

*Attorneys for Plaintiff and the Proposed Class*

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ............................................................................1

II.     BOTH IN ITS MOST RECENT BRIEFS AND IN THE
        AFFIDAVITS OF MR. FIDOPIASTIS, DEFENDANT MISSTATES
        THE LANGUAGE IN THE 2013 ARBITRATION AGREEMENT
        AND DOES SO IN A MANNER THAT IS SANCTIONABLE. ..................2

III.    IN ANY EVENT, THE AGREEMENT CANNOT BE ENFORCED
        BECAUSE IT IS UNCONSCIONABLE, AND RECENT CASES
        CONFIRM THIS FACT. .................................................................6

IV.     THIS COURT SHOULD NOT FIND THAT THERE WAS AN
        AGREEMENT TO ARBITRATE PLAINTIFF'S STATUTORY
        WAGE CLAIMS AGAINST US PACK UNDER EITHER NEW
        YORK OR NEW JERSEY LAW. .....................................................13

V.      CONCLUSION.............................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Anthony Intern., L.P.*,
   341 F.3d 256 (3d Cir.2003) ...............................................................................13

*American Exp. Co. v. Italian Colors Restaurant*,
   133 S. Ct. 2304 (2013)..................................................................................8, 13

*In re American Exp. Merchants' Litigation*,
   667 F.3d 204 (2nd Cir. 2012) .......................................................................8, 13

*Booker v. Robert Half Int'l*,
   413 F.3d 77 (D.C. Cir. 2005) ............................................................................13

*Ferguson v. Countrywide Credit Indus., Inc.*,
   298 F.3d 778 (9th Cir. 2002) ............................................................................11

*Hollick v. Cellular Sales of New York*,
   802 F.3d 391 (2nd Cir. 2015) ...........................................................................14

*Lai Chan v. Chinese-American Planning Council*,
   50 Misc.3d 201 (N.Y. Sup. Ct. 2015)................................................................14

*Lewis v. Express Messenger Systems, Inc.*,
   No. JCCP 4789, Order Granting Defendants' Motion to Compel
   Arbitration (LA Super Ct. Aug. 21, 2015) (attached as Exh. B to
   Third Fido. Decl., ECF No. 31-1).....................................................................12

*Mohamed v. Uber Technologies, Inc.*,
   109 F. Supp. 3d 1185, 1208 (N.D. Cal. 2105)..................................................12

*Nesbitt v. FCNH, Inc.*,
   ---F.3d---, 2016 WL 53816 (10th Cir. 2016)..............................................*passim*

*Serebryakov v. Golden Touch Transportation of New York*,
   2015 WL 1359047 (E.D.N.Y. Mar. 24, 2015)...................................................14

*Southerland v. Corporate Transit of America*,
   2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) ....................................10, 12, 13

*Spinetti v. Service Corp. Intern.*,
    324 F.3d 212 (3rd Cir. 2003) ...............................................................................11

*Sutherland v. Ernst & Young*,
    726 F.3d 290 (2nd Cir. 2013) ...........................................................................14

**Statutes And Other Authorities**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").....................................*passim*

## I.    INTRODUCTION

Although Defendant's latest brief is replete with new arguments, a new affidavit, and new cases allegedly involving the arbitration clause at issue in this case, Defendant continues to make assertions that are both untrue factually and demonstrate a continued attempt to misguide this Court in a manner that is a serious derogation of their obligation as attorneys.

Plaintiff will first address Defendant's misstatements to the Court. Next, Plaintiff will discuss the fact that for the first time, Defendant is practically conceding that its arbitration agreement is unconscionable through its citation to cases involving the same or similar arbitration clauses where courts have found these provisions to be unconscionable and severed them. It becomes clear that Defendant knew about these cases but did not previously disclose them to the Court even though these cases concerned allegedly the same clause, because they would have highlighted the unconscionability of this agreement. Further, despite the evidence showing that the agreement is unconscionable, Defendant does not concede its unconscionability nor agree to pay the costs of arbitration, and instead, misstates the Tenth Circuit's recent holding in an attempt to support its position. Finally, as described herein, Defendant does little to discuss the fact that the arbitration agreement itself does not demonstrate a meeting of the minds of an agreement to arbitrate disputes involving a non-party who has no discernible

relationship with Defendant. For all these reasons, the Court should deny Defendant's Motion to Compel Arbitration and Stay the Proceedings.

## II.   BOTH IN ITS MOST RECENT BRIEFS AND IN THE AFFIDAVITS OF MR. FIDOPIASTIS, DEFENDANT MISSTATES THE LANGUAGE IN THE 2013 ARBITRATION AGREEMENT AND DOES SO IN A MANNER THAT IS SANCTIONABLE.

Both in its reply and its reply to Plaintiff's sur-reply, Defendant states in unmistakable terms that because the 2013 and 2015 agreements are identical, no advantage could be gained by Defendant withholding the 2013 agreement as it did. (Def.'s Reply to Pl.'s Sur-Reply at 2, 8 (ECF No. 31); Def's Reply to Pl.'s Opp. at 11 (ECF No. 17.) In Defendant's reply to Plaintiff's sur-reply, Defendant states that "[t]he arbitration provision specifically contemplates that any dispute…is subject to arbitration and...encompasses any dispute, claim, question or disagreement arising from or relating to the breach thereof or service arrangement between owner-operator and SCI's clients…" (Def.'s Reply to Pl.'s Sur-Reply at 8; Second Fido. Decl. ¶ 3, Exh. A, 26th Para. (ECF No. 17-2)). Defendant says the same thing in its brief in support of its Motion to Compel Arbitration and in the First Fidopiastis Declaration, which is attached to that brief. (Def's Mot. at 7 (ECF No. 8-1); First Fido. Decl. ¶ 5, Exh. A, 26th Para. (ECF No. 8-2.))

In fact, the arbitration provision of the 2013 agreement is materially and significantly different than the 2015 agreement. The arbitration provision contained in the 2015 agreement refers to disputes with "clients," while the 2013

2

agreement makes clear that an arbitration can only be between the actual parties:
SCI and the driver. Specifically, the 2013 arbitration provision begins by stating,
"[i]n the event of any dispute, claim, question or disagreement arising from or
relating to this agreement or the breach thereof, the parties hereto shall . . . ." (2013
Agreement, 26th Para. (Exh. A to Second Fido. Decl.) (ECF No. 17-2.)) In contrast,
the 2015 arbitration provision was amended to begin: "[i]n the event of any
dispute, claim, question, or disagreement arising from or relating to this agreement
or the breach thereof, **or service arrangement between Owner/Operator and
SCI's clients**, the parties hereto shall . . . ." (2015 Agreement, 26th Para. (Exh. A to
First Fido. Decl.) (ECF No. 8-2) (emphasis added)).

It is clear that the language of the 2015 arbitration provision was amended to
contemplate arbitration between drivers and SCI's Clients, whereas the 2013
agreement contemplated arbitration between only SCI and the drivers as the
"parties." The term "parties" in both the 2013 and the 2015 encompasses only SCI
and the drivers. In fact, in paragraph 23 of the agreement – which is identical in
both the 2013 and 2015 Agreements –   it states "this agreement shall constitute the
entire agreement between the **parties**." (2013 Agreement, 23rd Para. (Exh. A of
Second Fido. Decl.) (ECF No. 17-2); 2015 Agreement, 23rd Para. (Exh. A of Fido.
Decl.) (ECF No. 8-2) (emphasis added)). Paragraph 23 further provides "this
agreement may not be altered or amended except by in writing signed by both

3

**parties**." (*Id.*) (emphasis added). This use of "parties" in both agreements logically encompasses only SCI and the drivers as signors.

In short, Defendant attempted to mislead this Court as to the terms of the 2013 arbitration agreement at issue in this case and has suggested that it refers to "clients" of SCI, when in fact it does no such thing. This is a serious misstatement by Defendant and provides Defendant's "nefarious" reason for not providing the 2013 Agreement with its opening brief. A fair analysis of the arbitration provision in question reveals that it cannot be used to compel arbitration of Plaintiff's dispute with US Pack.

First, US Pack is not a signatory, and US Pack is nowhere mentioned in the arbitration agreement or elsewhere. The law is clear that arbitration is a matter of agreement, and a party cannot be required to arbitrate that which they did not agree to.

Second, the arbitration agreement does not refer to statutory claims at all, but only to disputes "arising from or relating to this agreement." (2013 Agreement, 26th Para. (Exh. A to Second Fido. Decl.) (ECF No. 17-2.)) Plaintiff is not bringing a claim under the agreement, but only under the New Jersey wage statutes. There was no agreement to arbitrate those claims. In other words, there was no possibility of this Court having a positive assurance that the parties meant to arbitrate claims involving US Pack when US Pack is nowhere referred to even as a "client" in the

arbitration clause. Moreover, there is no evidence of a "close relationship" between US Pack and SCI that would justify equitable estoppel. SCI is a third-party administrator, and Defendant has not established that there is a corporate relationship between the entities. In all the other cases that Defendant cited, SCI and the courier company were sued together, and it was the plaintiff who was estopped from disclaiming the arbitration agreement, because he claimed both parties were joint employers together. Here, Plaintiff has made no such claim and he cannot be held to such an obligation when he has specifically disclaimed it. Thus, the court must deny arbitration for the following reasons relating to the proper interpretation of the agreement:

1. The agreement nowhere reveals an intent or agreement by the Plaintiff to arbitrate claims against US Pack.

2. The agreement does not refer to clients or in any way suggest that the arbitration is with anyone else other than the "party" SCI.

3. The arbitration clause is a so-called narrow clause only relating to disputes arising out of the agreement, and does not, as the 2015 agreement does, relate to other parties such as "clients" of SCI, or to statutory claims unrelated to the agreement.

4. Defendant has attempted to misled the Court into believing that the operative 2013 arbitration agreement ran to "clients" of SCI, when in fact the plain text of the provision shows that it does not, which might explain why the 2013 Agreement was not first produced.

5. The FAA does not apply to this case, and neither New York nor New Jersey law would compel arbitration because plaintiffs would not have known that they were consenting to waive their rights to a judicial forum against US Pack.

5

### III.  IN ANY EVENT, THE AGREEMENT CANNOT BE ENFORCED BECAUSE IT IS UNCONSCIONABLE, AND RECENT CASES CONFIRM THIS FACT.

Defendant makes light of the unconscionable provisions in the Agreement, and now submits yet another round of new cases that found these same contractual provisions to be unconscionable and required the provisions to be struck. First, to reiterate, the Agreement has multiple provisions that are unconscionable, including:

1. Requiring Plaintiff to pay one half the arbitration costs including the arbitration fees for one and a half of the arbitrators at thousands of dollars a day, and paying the initial arbitration fee, even though Plaintiff cannot possibly afford to do so.

2. The arbitration agreement, in direct violation of New Jersey law, requires Plaintiff to be responsible for his own attorneys' fees even if he ultimately prevails and would be entitled to attorneys' fees under the New Jersey wage statute.

3. The agreement bars the arbitrator from awarding injunctive or equitable relief, in the form of ending the misclassification of Plaintiff as an independent contractor, when he is in fact an employee, which negates a major reason for this lawsuit.

4. There are limitations on discovery such as taking only three two-hour depositions, which will not possibly provide Plaintiff with enough discovery to demonstrate his misclassification as an employee under the New Jersey three-part test.

(Feb. 20, 2013 Agreement, 26th Para. (Exh. A to Second Fido. Decl.) (ECF No. 17-2.))

6

Although Defendant suggests that there was nothing unconscionable about forcing Mr. Easterday, with his extremely limited means (*see generally* Easterday Decl. (ECF No. 9-1), to pay all the costs of arbitrating this case, and then be limited in the relief he can seek, including a prohibition on his recovering attorneys' fees, the law is otherwise. As Plaintiff recently pointed out his Notice of Supplemental Authority, on January 5, 2016, the Tenth Circuit United States Court of Appeals held in *Nesbitt v. FCNH, Inc.*, ---F.3d---, 2016 WL 53816 (10th Cir. 2016) that where an arbitration clause signed by an individual would not permit a plaintiff to "effectively vindicate[e]" her rights under the arbitration agreement, such a provision is unenforceable. *Nesbitt*, 2016 WL 53816, at *3-4. There, just as here, the arbitration provision provided that the plaintiff would have to pay her half of the arbitration fees, including the thousands of dollars that would have to be paid to the arbitrator, and would be responsible for her own costs and attorney fees, and that taken together these provisions would prevent her from "effectively vindicating her statutory rights under the FLSA."[1] *Id.* at *6-7. The Tenth Circuit held that it was clear from U.S. Supreme Court decisions that where an arbitration agreement would act as a prospective waiver of certain statutory rights available to a party, such that it would make access to the forum impractical, such an

---

[1] There it was undisputed that the FAA governed, whereas here it does not govern because the Plaintiff was engaged in the interstate transportation of goods, an exception to the FAA.

agreement would be ineffective where the agreement would "actually prevent an individual from effectively vindicating his or her statutory rights." *Id.* at *4.[2]

As explained by the Tenth Circuit, "in determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration." *Id.* at *5. Here, as previously discussed, this Court should not hold that Mr. Easterday intended to send his statutory claims to arbitration, because, *inter alia*: 1) Plaintiff never signed an agreement with US Pack, the only defendant in the case; 2) the agreement that Plaintiff did sign with SCI only talks about issues arising out of the agreement; and 3) Plaintiff's statutory claims are not contemplated by the agreement.

The Tenth Circuit next addressed the defendant's argument that the matter should be sent to arbitration because it was always possible at arbitration that an arbitrator would place some of the costs on the defendant or that the plaintiff could apply to the Arbitration Association for a reduction of fees. But the Tenth Circuit made clear, that one had to look at the agreement as it stood at the time the

---

[2] Moreover, the Second Circuit, interpreting New York law, held in *In re American Exp. Merchants' Litigation*, 667 F.3d 204, 218-19 (2nd Cir. 2012) that the failure to permit the vindication of statutory rights precludes enforcement of an arbitration clause. That decision was subsequently overturned by the United States Supreme Court interpreting the FAA, *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), but since the FAA is not applicable here, it is clear that the Second Circuit's decision remains good law insofar as it interprets non-FAA related cases, and since Defendant here claims to rely on New York law, it is clear the Second Circuit would not permit the arbitration clause at issue here.

individual would be making the decision, not at what might happen in the future.

The Tenth Circuit specifically held:

> In doing so we stated that it was unlikely that an employee in the plaintiff's position faced with the mere possibility of being reimbursed for arbitrator fees in the future would risk advancing those fees in order to access the arbitral forum. Likewise, the Sixth Circuit has rejected a similar argument noting that in many cases if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst case scenario would mean not only losing on their substantive claims but also the imposition of costs of the arbitration.

*Nesbitt*, 2016 WL 53816, at *5.

Indeed, the Tenth Circuit describes how in any wage and hour arbitration case like the one before it, splitting the arbitrator's fees would require the plaintiff to advance thousands of dollars. *Id.* at *7. Defendant claims that the holding of the Tenth Circuit in *Nesbitt* is distinguishable because the agreement there did not have a severability provision. While that is true, Defendant is incorrect in suggesting that the Tenth Circuit's opinion was based on the lack of a severability provision. In fact, the Tenth Circuit's decision is unrelated to the severability issue and instead rests on the premise that "it is unlikely that an employee in the plaintiff's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum," and therefore it affirmed the District Court's motion denying a motion to compel arbitration. *Id.* at *7.

9

In its most recent reply brief, Defendant now cites additional cases, a state court decision in California, and a decision by the Federal District Court for the Eastern District of Michigan, which purport to enforce this same SCI arbitration agreement. The Michigan case, *Southerland v. Corporate Transit of America*, 2014 WL 4906891 (E.D. Mich. Sept. 30, 2014), is distinguishable for three important reasons. First, the court was not faced with the issue of whether the FAA applied, because the plaintiff failed to raise the argument. 2014 WL 490689, at *3. Thus, it assumed only that the FAA was applicable, and the portion of the opinion relating to the FAA favoring enforcement of arbitration agreements is inapplicable to this case. *Id.* at *3-4. Second, Plaintiff respectfully submits that the District Court erred in its analysis of whether the (1) "the signatory's claims arise under the subject matter of the underlying agreement," and (2) "whether there is a close relationship between the signatory and the non-signatory party." *Id.* at *5. Here, Plaintiff did not challenge his contract with SCI,  and there is nothing in this record to show that there is a close relationship between US Pack and SCI. As stated before, SCI is simply a third-party administrator, having nothing to do with delivering goods, and US Pack is a nationwide courier company, which simply purchases services from SCI. The close relationship necessary does not exist. Moreover, in *Southerland,* the court noted that the plaintiffs do "not mention the SCI agreement, let alone the arbitration clause found therein." *Id.* at 6. Thus, unlike here, the Michigan plaintiffs

10

waived that argument. The court emphasized that the plaintiffs "only challenge the validity of the agreement as a whole: nowhere do they challenge the validity of the agreement to arbitrate." *Id.* at 6. In fact, challenging the validity of the agreement to arbitrate is exactly what Plaintiff has done here. Further, the court noted that "plaintiffs specifically challenge the arbitration agreement as unconscionable in their supplemental brief on their enforceability of the remedies limitation, but they have only done so at the court's prompting." *Id.* at 7. And most importantly, and strikingly, the only provision that was challenged as unconscionable in that case was the limitation on discovery and the limitation on obtaining attorneys' fees, but nowhere did the plaintiffs challenge the costs of the arbitrator's fees, which is the main objection cited by the Tenth Circuit in *Nesbitt*, and has been asserted by the Plaintiff here. *Id.* at *7-9.

Indeed, many courts have commented that the cost of splitting the arbitrator could cost the plaintiff thousands of dollars on a claim that may not be worth nearly that much. As noted in *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002), which was decided more than a decade ago, arbitrator fees typically run into *thousands* of dollars each day, as arbitrators often charge $300-$400 per hour. *See also Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 217 (3rd Cir. 2003) (acknowledging that the arbitrator fees for the arbitration at issue would likely amount to thousands of dollars per day in addition to

similarly sizeable filing fees to be paid up front); *Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185, 1208 (N.D. Cal. 2105) (acknowledging that arbitrator's fees in an employment misclassification arbitration similar to this one would reach into the tens of thousands of dollars, including initial fees to be paid upfront). Moreover, the arbitration provision calls for a panel of three arbitrators, thus tripling arbitrator fees. Thus it cannot be disputed that paying for these arbitrators will require upfront payment of costs and will run at least several thousand dollars or more.

Finally, in both *Southerland* and *Lewis v. Express Messenger Systems, Inc.*, No. JCCP 4789, Order Granting Defendants' Motion to Compel Arbitration (LA Super Ct. Aug. 21, 2015) (attached as Exh. B to Third Fido. Decl., ECF No. 31-1), the California case that Defendant cites, the courts found that certain provisions were unconscionable, and then severed them. *See Southerland*, 2014 WL 4906891, at *10; *Lewis*, No. JCCP 4789 at 12-15. But in *Lewis*, the severance was pursuant to a statute providing for severance, and the Eastern District Court of Michigan severed, but failed to heed the warning of the Tenth Circuit that one has to look at the agreement at the time the plaintiff would have to decide how to proceed, not what a court might do months later, because the plaintiff would still be required to demand arbitration and pay the upfront costs. *Compare Lewis*, No. JCCP 4789 at 12-15, *with Nesbitt*, 2016 WL 53816, at *5-6. Moreover, the court in *Southerland*

acknowledged that there may be times when the arbitration agreement is so objectionable as to be unenforceable. *Southerland*, 2014 WL 4906891, at *10 (*citing Alexander v. Anthony Intern., L.P.,* 341 F.3d 256, 271 (3d Cir. 2003); *Booker v. Robert Half Int'l*, 413 F.3d 77, 84-85 (D.C. Cir. 2005)). While the court held that the *Southerland* plaintiffs did not make the requisite showing necessary to overcome severability, the court did not address how the arbitrator fee issue would push that determination over the line, which Plaintiff has demonstrated here.

## IV.   THIS COURT SHOULD NOT FIND THAT THERE WAS AN AGREEMENT TO ARBITRATE PLAINTIFF'S STATUTORY WAGE CLAIMS AGAINST US PACK UNDER EITHER NEW YORK OR NEW JERSEY LAW.

As outlined in Plaintiff's prior briefs, where it is clear that the FAA did not apply, the arbitration agreement can only be enforced under principles of state law. Plaintiff asserts that under New Jersey law, where the Plaintiff worked and lived, this agreement is unenforceable. Defendant tries to invoke the choice of law in New York. The Court need not resolve this dilemma, because either way the agreement is unenforceable. Indeed, in *Italian Colors*, 667 F.3d at 218-19, the Second Circuit, before being reversed by the Supreme Court under the FAA, found that where arbitration costs were substantial, an arbitration agreement would not be enforced. Furthermore, numerous New York cases post-*Italian Colors*, stand for the proposition that where there is not a clear agreement to arbitrate a particular claim, such a motion to compel will not be granted, because most importantly, the

13

agreement to arbitrate a claim is one of contract, requiring a meeting of the minds such that the plaintiff demonstrates that he or she agreed to arbitration particular claims. *See, e.g.*, *Hollick v. Cellular Sales of New York*, 802 F.3d 391, 397-99 (2nd Cir. 2015) (where agreement only provides for arbitration in relation to individuals' "employment" with the company, claims from when he was working as an independent contractor were not covered, even if arbitration agreement there was broad, it still must be clear that the agreement was intended to cover the particular dispute)[3]; *Lai Chan v. Chinese-American Planning Council*, 50 Misc.3d 201, 210-11 (N.Y. Sup. Ct. 2015) (an arbitration clause cannot bar the bringing of statutory rights in court "unless the arbitration clause in the agreement is clear and unmistakable that the parties intended to arbitrate such individual claims") (internal citation omitted); *Serebryakov v. Golden Touch Transportation of New York*, 2015 WL 1359047, at *6-9 (E.D.N.Y. Mar. 24, 2015) (if an arbitration clause is narrow, a court will not compel arbitration over claims collateral to the agreement, and there must be evidence sufficient to survive summary judgment that the parties intended the particular dispute to be arbitrated, and therefore arbitration should not be compelled); *Sutherland v. Ernst & Young*, 726 F.3d 290, 298 (2nd Cir. 2013) (same).

---

[3] Again, in this case, there is not a broad arbitration agreement covering all claims statutory or otherwise, but only a very narrow clause covering disputes arising out of the agreement. Plaintiff is not challenging his agreement with SCI, he is bringing statutory claims in which the agreements are irrelevant.

14

In the present case, if the Court allows US Pack to assert claims under the agreement, this Court should hold it to the contract that SCI forced Plaintiff to sign. That agreement prohibits the recovery of attorneys' fees and costs in violation of the New Jersey Wage and Hour law, prohibits injunctive relief that would cure the misclassification of the class, and most importantly, would require Plaintiff to split the administrative and arbitration costs of the three-person arbitration panel thereby erecting a barrier that would be insurmountable for the Plaintiff whose income is exceedingly small. The fact that Defendant now suggests that the Court could start severing provisions of the agreement is irrelevant, because so much of the agreement is objectionable that an individual deciding whether to invoke their rights in arbitration would be very hesitant to do so.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and Stay the Proceedings in its entirety.


Dated:  January 27, 2016                    Respectfully submitted,

                                            /s/ Alexandra K. Piazza
                                            Alexandra K. Piazza, NJ Bar No. 010922013
                                            Shanon J. Carson (*pro hac vice* forthcoming)
                                            Sarah Schalman-Bergen (*pro hac vice* forthcoming)
                                            BERGER & MONTAGUE, P.C.
                                            1622 Locust Street
                                            Philadelphia, PA 19103
                                            Telephone: (215) 875-3000
                                            apiazza@bm.net

15

scarson@bm.net
sschalman-bergen@bm.net

Harold Lichten (*pro hac vice* forthcoming)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com

Edward A. Wallace (*pro hac vice* forthcoming)
Amy E. Keller (*pro hac vice* forthcoming)
Wexler Wallace LLP
55 W. Monroe St. Ste. 3300
Chicago, IL 60603
Telephone: (312) 346-2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served by electronic filing upon counsel for Defendant USPack Logistics LLC.

Dated: January 27, 2016                    /s/ Alexandra K. Piazza

                                                                      Alexandra K. Piazza

17