NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| | : | |
| MICHAEL EASTERDAY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 15-07559 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| USPACK LOGISTICS, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the following motions: (1) Defendant's Motion to Stay (Doc. 206); (2) Defendant's Appeal of Magistrate Judge Decision (Doc. 207); and (3) Plaintiff's Motion to Strike (Doc. 211). For the reasons stated herein, the Motion to Stay is **DENIED**, and the Motion to Strike is **DENIED**. The Magistrate Judge decision is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this Opinion.

## I.      BACKGROUND

Plaintiff, Michael Easterday, is a former employee of Defendant, US Pack Logistics LLC. (Doc. 1, "Compl.") USPack provides courier services throughout the Northeastern United States for companies selling pharmacy related services to customers in the health care industry. (*Id.* ¶11.) USPack's delivery drivers report to USPack's warehouse in Moorestown, New Jersey and deliver items to healthcare facilities throughout New Jersey, Pennsylvania, Delaware, New York, and Connecticut. (*Id.* ¶12.) Plaintiff worked as a delivery driver for Defendant, delivering pharmaceutical products to long term care centers, hospitals, and other medical facilities (*Id.* ¶¶8,

18.) Plaintiff alleges that Defendant improperly classified him as an independent contractor, subjecting him to improper deductions from his pay and denial of overtime pay. (*See, e.g.*, *id.* ¶43.) Plaintiff brought the present suit on behalf of himself and a class of similarly situated individuals, alleging causes of action for "Violation of New Jersey Wage Payment Law," "Violation of Overtime Wage and Hour Law," and "Unjust Enrichment." (*Id.* ¶28.)

### *The Arbitration Provision and Related Terms*

Defendant alleges that Plaintiff signed an employment contract (the "Contract") which contains a binding arbitration agreement (the "Arbitration Provision"). Defendant argues that, pursuant to the Arbitration Provision, Plaintiff's action is subject to arbitration, and Plaintiff is disallowed from bringing a class action due to the provision prohibiting class actions ("Class Action Waiver"). (*See* Doc. 8.)

The Contract contains several relevant provisions. (Doc. 17-2.) First, the Contract contains a general choice of law provision that provides that "[t]his Agreement shall be governed by the laws of the State of New York." (*Id.* ¶23.) Second, the Contract also contains class action waiver language, stating that "[n]either you or SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claims as a representative member of a class[.]" (*Id.*) Third, the Arbitration Provision provides that "[a]ll other disputes, claims, questions, or differences . . . shall be finally settled by arbitration in accordance with the Federal Arbitration Act." (*Id.* ¶26.) Other portions of the Arbitration Provision address the composition of the arbitration panel, discovery, and damages. (*See id.*) However, the Contract does not specify what law shall apply in the case that the FAA is deemed inapplicable or what law determines the enforceability of the Arbitration Provision. Fourth, the Contract contains a severability clause, which provides that if any portion of the Contract is found to be unenforceable,

"said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof." (*Id.* ¶23.)

### The Initial Motion to Compel Arbitration

In November 2015, Defendant first moved to compel arbitration. (Doc. 8.) In response, Plaintiff argued that the Court could not compel arbitration pursuant to the FAA because Plaintiff, as a transportation worker, was subject to the "Section 1 Exemption." (Doc. 9.) Under the FAA's Section 1 Exemption, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from arbitration. 9 U.S.C. § 1. Defendant argued that Plaintiff was not exempt from arbitration under Section 1 because, as an independent contractor, Plaintiff did not fall under the Section 1 Exemption for "employees." (Doc. 42.) Judge Donio could not determine based on the pleadings whether Plaintiff was an independent contractor or an employee. (*Id.*) Accordingly, Judge Donio denied the Motion to Compel without prejudice and stayed the proceedings pending the outcome of discovery. (*See id.*) The parties engaged in limited discovery regarding whether Plaintiff was an employee for the purposes of the FAA transportation worker exemption.

### The United States Supreme Court's Decision in New Prime Inc.

In 2018, the United States Supreme Court granted cert in *New Prime Inc. v. Oliveria*, and Judge Donio stayed the case pending the Supreme Court's consideration of the case. (Doc. 155.) The Supreme Court issued a decision in *New Prime Inc.* on January 15, 2019, determining that the FAA exempts from its coverage contracts of *both* independent contractors and employees— therefore, finding that a distinction between employees and independent contractors is immaterial. *New Prime Inc.*, 139 S. Ct. 532, 543–44 (2019). On February 27, 2019, Judge Donio held a

telephone conference with the parties, in which both parties agreed that the decision in *New Prime Inc.* resolved whether Plaintiff could be compelled to arbitrate under the FAA.  (*See* Doc. 169, "Telephone Conference Tr." at 5–6.) Thus, Judge Donio determined that *New Prime Inc.* "resolved the threshold question of whether Plaintiff falls under the FAA exemption" because the "Supreme Court found that the FAA excludes from its coverage contracts such as the one here regardless of the status of the driver as an employee or independent contractor." (Doc. 194, "Order" at 5.) Concluding that Plaintiff was exempt from arbitration pursuant to the FAA, Judge Donio then reopened the case. After supplemental briefing on the issue, Judge Donio denied the renewed request to compel arbitration (Doc. 194), and Defendant appealed. (Doc. 207.)

### *The New Jersey Supreme Court's Decision in* **Arafa**

In the supplemental briefing before Judge Donio, the parties acknowledged an inconsistency within New Jersey appellate courts in an area of law directly affecting the outcome of this case. In *Colon v. Strategic Delivery Solutions, LLC*, the Appellate Division of the New Jersey Superior Court evaluated whether a group of plaintiffs were required to arbitrate their wage and hour claims. 210 A.3d 932, 933 (N.J. Super. Ct. App. Div. 2019). The plaintiffs had signed arbitration agreements, providing that the parties would arbitrate any disagreements under the FAA. *Id.* at 939. However, the plaintiffs argued that they were transportation workers engaging in interstate commerce, and therefore, were exempt from arbitration under the FAA. *Id.* The court considered whether the arbitration agreements could instead be enforced under state law, even though they specifically elected the FAA as the enforcement mechanism. *Id.* The arbitration provision also stated that "the issue of arbitrability" would be determined by "the law of the state of residence of the vendor[; New Jersey.]" *Id.* Accordingly, the court concluded that "even if

plaintiffs [we]re exempt under Section one of the FAA, they still [we]re required to arbitrate their claims under the [New Jersey Arbitration Act 'NJAA']." *Id.*

In contrast, in *Arafa v. Health Express Corp.*, No. A-1862-17T3, 2019 WL 2375387, at *1 (N.J. Super. Ct. App. Div. June 5, 2019) (hereinafter "*Arafa I*"), a separate panel of the Appellate Division of the New Jersey Superior Court evaluated a nearly identical case but reached an incongruent conclusion. In *Arafa I*, a plaintiff similarly argued that he could not be forced to arbitrate under the FAA because he was a transportation worker engaging in interstate commerce. *Id.* The arbitration provision stated that the FAA would apply, and it provided no other mechanism for enforcement in case the FAA was deemed inapplicable. *Id.* After finding that the plaintiff was a transportation worker engaged in interstate commerce, the court concluded that "the inapplicability of the FAA to the parties' arbitration agreement undermine[d] the entire premise of the contract[.]" *Id.* at *2. The court found that "[b]ecause the FAA cannot apply to the arbitration, as required by the parties, their arbitration agreement [was] unenforceable for lack of mutual assent." *Id.* The main difference between the arbitration agreements in *Colon* and *Arafa I* was that the agreement in *Colon* specifically provided that New Jersey state law would determine the issue of arbitrability.

In the Order denying the Motion to Compel Arbitration, Judge Donio concluded that the present case was more similar to *Arafa I* because the Arbitration Provision did not include an alternative mechanism to compel arbitration if the FAA was deemed inapplicable and did not specify what state laws would determine arbitrability. (Order at 26.) Accordingly, Judge Donio found that because the FAA did not apply, the entire Arbitration Provision was unenforceable for lack of mutual assent. (*Id.*)

However, on July 14, 2020, the New Jersey Supreme Court issued an opinion in *Arafa v. Health Express Corporation*, 233 A.3d 495 (N.J. 2020) (hereinafter "*Arafa II*"), resolving the conflict between *Colon* and *Arafa I*. In *Arafa II*, the New Jersey Supreme Court found that there was no meaningful difference between the arbitration provisions in *Arafa I* and *Colon*, holding that it did not matter that the arbitration provision in *Arafa I* did not elect which state laws would determine arbitrability. *Id.* at 507. Instead, the Court noted that the NJAA governs "all agreements to arbitrate made on or after January 1, 2003." *Id.* at 506. Thus, since its enactment, the NJAA has applied automatically as a matter of law to all non-exempted arbitration agreements from its January 1, 2003 effective date. *Id.* Based on the mandatory nature of the NJAA, the Court held that "the NJAA will apply . . . even without being explicitly referenced in an arbitration agreement; no express mention of the NJAA is required to establish a meeting of the minds that it will apply inasmuch as its application is automatic." *Id.* at 507. Importantly, in a footnote, the court "reject[ed] the proposition that the inapplicability of the FAA must vitiate the entire agreement to arbitrate" because "both contracts at issue contained clear severance clauses," which were "indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision." *Id.* at 507 n.2.

### Other Pending Motions

Defendant also filed a Motion for a Stay, requesting the Court to stay litigation pending the outcome of the District Judge's ruling on Defendant's appeal. (Doc. 206.) Plaintiff opposed the stay. (Doc. 208.) Additionally, because Defendant's brief exceeded forty pages, and the Court had not granted Defendant permission to file an overlength brief, Plaintiff filed a Motion to Strike Defendant's brief. (Doc. 211.) Defendant opposed. (Doc. 217.)

## II.   LEGAL STANDARD

### 1.  Motion to Strike

Local Rule 7.2(b) states that "[a]ny brief shall include a table of contents and a table of authorities and shall not exceed 40 ordinary typed or printed pages[.]" If a party wishes to exceed the page limit, advance permission must be obtained and will be granted where good cause is shown. *See, e.g.*, *Buchholz v. Victor Printing*, 877 F. Supp. 2d 180, 182 n.1 (D.N.J. 2012). Where a party violates Rule 7.2(b), the Court may disregard or strike the overlength brief. *See, e.g.*, *Capaldi v. BJ's Wholesale Club, Inc.*, 2020 WL 2569965, at *2 (D.N.J. May 21, 2020).

### 2.  Appeal of Magistrate Judge Decision

A United States Magistrate Judge may hear and issue a decision on a non-dispositive, pre-trial matter pending before the court. 28 U.S.C. § 636(b)(1)(A); *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017); *see also* Fed. R. Civ. P. 72(a). Once the magistrate judge issues an order on that motion, the parties have fourteen days to serve and file objections to it under Federal Rule of Civil Procedure 72(a). A party's timely appeal invokes the district court's consideration of the order to modify or set aside any part of it. 28 U.S.C.§ 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

In an appeal of a magistrate judge's order, the appellant has the burden of showing the magistrate judge's legal decision and/or fact-finding meets the appropriate standard for reversal. *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994). A district court will overturn a magistrate judge's non-dispositive ruling only if it is "clearly erroneous or contrary to law." 28 U.S.C.§ 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c) (1)(A). The Third Circuit has held that a decision to compel arbitration and stay litigation is a non-dispositive matter. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense

found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation.") (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010)). Accordingly, the Court will review findings of fact under a clearly erroneous standard and will undertake a de novo review to determine if legal conclusions are contrary to law. *See, e.g.*, *Nat'l Labor Relations Bd. v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992).

Findings are clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948); *see also Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). The "contrary to law" standard entails a de novo review whether the magistrate judge's ruling "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.,* 237 F.R.D. 545, 548 (D.N.J. 2006). The party filing the appeal has the burden of showing that the magistrate judge's ruling was clearly erroneous or contrary to law. *Exxon Corp. v. Halcon Shipping Co. Ltd.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

It is well-settled that arguments not presented to a magistrate judge and raised for the first time on appeal are deemed waived. *See In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, No. 18-3327, 2020 WL 4813889, at *7 (3d Cir. Aug. 19, 2020). Even a passing reference to an issue does not suffice to preserve it. *See Laborers' Int'l Union of N.A. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

### 3.   Motion to Compel Arbitration

Where a party petitions to enforce an arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Martindale v. Sandvik, Inc.*, 800 A.2d

872, 877 (N.J. 2002).

In passing the FAA, Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009) (citations omitted). Similarly, New Jersey courts "in deciding whether to enforce" an arbitration provision "rely on the well-recognized national policy and the established State interest in favoring arbitration." *Sandvik*, 220 F.3d at 104. However, the strong presumption in favor of arbitration "does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co.* at 523. Rather, before granting a motion to compel arbitration, a court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citations omitted).

In the Third Circuit, "where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," the court "resolv[es] a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). In this situation, the issue of "arbitrability" is "apparent on the face of the complaint[.]" *Id.* However, where one party argues that "it did not intend to be bound" by the arbitration agreement, or where the face of the complaint does not provide the "requisite clarity to establish on its face that the parties agreed to arbitrate," a "restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate." *Id.* Accordingly, in these scenarios, a summary judgment standard will apply. *Id.*

## III.  DISCUSSION

### A.  Motion to Strike

On May 19, 2020, Defendant filed a Letter with the Court requesting to file an overlength brief in support of its Appeal of Judge Donio's denial of the Motion to Compel Arbitration. (Doc. 208.) Defendant requested "an additional twenty to twenty-five pages over the page limit[.]" (*Id.*) Before the Court could rule on Defendant's request, Defendant filed its sixty-page Appeal on May 23, 2020 (Doc. 207.) Plaintiff thereafter filed a Motion to Strike, arguing that Defendant, "[w]ithout first obtaining permission from the Court[,] . . . filed a brief that exceeded the page limit set by Local Civil Rule 7.2(b)[.]" (Doc. 211.) Plaintiff requested that the Court strike the entire brief, and in particular, the portion of the brief asserting that Plaintiff does not fall within the transportation worker exemption. (*Id.*)

The Court notes that Defendant *did* attempt to obtain permission to file an overlength brief, prior to filing the Appeal. (*See* Doc. 208.) However, the Court had not yet ruled on the request when Defendant filed its brief. The Court also notes that, as discussed below, Defendant spends a large portion of its brief raising a new argument that it had not previously asserted before Judge Donio and asserting a position that it had in fact already waived on the record. However, the Court also notes that the parties have been litigating the issue of arbitration in this case for nearly five years. The topic has been the subject of extensive briefing before Judge Donio, including briefing on recent Supreme Court precedent and a split of authority within New Jersey state courts. Judge Donio's Order denying the Motion to Compel Arbitration was nearly thirty pages long, as was necessary to address the parties' extensive arguments. Accordingly, given these facts, the Court finds that there was good cause to file an overlength brief. Nevertheless, the Court notes that in future filings, the parties should refrain from filing overlength briefs to address arguments that have already been waived. In sum, because Defendant has demonstrated good cause for an overlength brief, the Motion to Strike is **DENIED**.

### B.  Appeal of Magistrate Judge Decision

Defendant argues that Judge Donio should have granted the motion to compel and therefore erred in not referring the matter to arbitration. (Appeal at 11.) Defendant asserts four arguments that are relevant to disposition of the appeal: (1) Defendant has preserved its right to challenge Judge Donio's determination on the Section 1 Exemption; (2) Judge Donio erred in finding that the Arbitration Provision was exempt from enforcement under the FAA; (3) Judge Donio erred in the choice of law analysis; and (4) Judge Donio erred in finding the Arbitration Provision unenforceable under state law. The Court addresses each argument in turn.

### 1.  Whether Defendant Has Preserved its Right to Challenge Judge Donio's Determination on the FAA Section 1 Exception

Defendant first asserts that Judge Donio erred in finding that Plaintiff is exempt from arbitration under the FAA. (Appeal at 11.) The parties disagree over whether Defendant has waived this argument or has properly preserved it for appeal. Plaintiff argues that Defendant "advance[es] a theory that it did not raise before Judge Donio, and indeed waived—that the transportation worker exemption of the FAA is inapplicable to Plaintiff because he was supposedly not engaged in interstate commerce." (Opp. at 13.) Plaintiff argues that Defendant agreed on the record that Plaintiff was covered by the transportation worker exemption. (*Id.*) Conversely, Defendant argues that it has properly preserved its right to challenge Judge Donio's determination on the applicability of the FAA Section 1 exception because it has "waited patiently for the Magistrate Judge to issue a formal ruling on the Section 1 exception issue before invoking its right to appeal." (Appeal at 12.)

The Court briefly restates the relevant procedural background. Defendant first moved to compel arbitration in 2015. (Doc. 8.) Plaintiff opposed the motion, arguing that Defendant could not compel arbitration pursuant to the FAA because Plaintiff was exempt from the FAA under

Section 1. (Doc. 9.) At that time, prior to the Supreme Court's decision in *New Prime Inc.*, it was unclear whether the Section 1 Exemption applied to contracts of employers and employees only, or whether it also applied to contracts between employers and independent contractors. Plaintiff argued that he was an employee, and therefore he fell under the Section 1 Exemption. Conversely, Defendant argued that Plaintiff was an independent contractor. Based on the parties' arguments, Judge Donio ordered limited discovery on the issue of whether Plaintiff was an employee or an independent contractor. (Doc. 42.) Defendant moved for reconsideration (Doc. 48), and later appealed (Doc. 67).

After limited discovery occurred, Defendant requested that the Court stay proceedings pending the Supreme Court's decision in *New Prime Inc. v. Oliviera*. Defendant argued that the decision in *New Prime Inc.* would determine the "dispositive issue in this case." (Doc. 141.) Judge Donio granted the stay. Judge Donio held a telephone conference on February 27, 2019 to address the Supreme Court's ruling in *New Prime, Inc.* (*See* Doc. 169.) She noted that "the decision by the Supreme Court makes clear that transportation workers engaged in interstate commerce and including those classified as independent contractors are exempt from Federal arbitration." (*Id.* at 5–6.) Both parties agreed that was correct. (*Id.*) Judge Donio also stated "the case by the Supreme Court makes clear that regardless of which classification, *the plaintiff is exempt from arbitration under the Federal Arbitration Act*." (*Id.*) (emphasis added.) Judge Donio asked the parties if they agreed. (*Id.*) *Both* parties agreed with that statement. (*Id.*) Therefore, Judge Donio requested supplemental briefing solely on the issue of whether the arbitration agreement was enforceable under state law since it was not enforceable under the FAA.

Nowhere in any of Defendant's prior briefing—including the original motion to compel arbitration, the motion for reconsideration, the appeal of Judge Donio's denial of the original

motion to compel, or the post-*New Prime Inc.* briefing in support of the renewed motion to compel—has Defendant advanced the argument that Plaintiff did not fall into the Section 1 Exemption because he did not participate in interstate commerce. As a new argument, Defendant may not take this position for the first time on appeal. *See, e.g.*, *Harris v. Holmes*, No. 14-00460, 2017 WL 477692, at *2 (D.N.J. Feb. 6, 2017) ("Because none of this argument was presented to the Magistrate Judge, however, this Court cannot find that the Magistrate Judge's decision was clearly erroneous."). Moreover, Defendant agreed, on the record, that "plaintiff is exempt from arbitration under the Federal Arbitration Act." (*See* Doc. 169 at 6.) Accordingly, the Court finds that Defendant has waived its argument that Plaintiff is not engaged in interstate commerce.

### 2. Whether Judge Donio Erred in Finding the Arbitration Provision Exempt from Enforcement Under the FAA

Nevertheless, the Court finds that Judge Donio did not err in her conclusion that the arbitration provision was exempt from enforcement under the FAA. Judge Donio found that "under *New Prime Inc.*, Plaintiff falls under the Section 1 exemption of the FAA—the transportation worker exemption." (Order at 7.) Judge Donio held that "[i]f an employer's business is centered around the interstate transport of goods and the employee's job is to transport those goods to their final destination—even if it is the last leg of the journey—that employee falls within the transportation worker exemption." (*Id.*) Judge Donio did not create "a new rule" as Defendant asserts. Rather, Judge Donio relied on the factually similar case of *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1201 (W.D. Wash. 2019), *aff'd* 971 F.3d 904.

In *Rittmann*, a group of delivery drivers claimed they were exempt from enforcement of an arbitration provision under the FAA because they were "a class of workers engaged in interstate commerce" and thus fell within the Section 1 Exemption. 971 F.3d at 915. The delivery drivers did not cross state lines, but nevertheless carried goods as "part of a continuous interstate

transportation[.]" *Id.* at 916. The court found that this was sufficient to establish that "those drivers [we]re engaged in interstate commerce." *Id.* The Ninth Circuit affirmed. *Id.* Similarly, in this case, Judge Donio found that the face of the Complaint established Plaintiff was "unequivocally engaged in interstate commerce, given the fact that [the drivers] delivered medicines and pharmaceutical products . . . from a supplier's warehouse to various customers that included long term care centers, hospitals, and other medical facilities on behalf of" Defendant. (Order at 7.) Judge Donio concluded that, like the drivers in *Rittman*, Plaintiff was part of continuous interstate transportation, and therefore he was engaged in interstate commerce. (*Id.*)

Defendant argues that Judge Donio's decision conflicted with on point Third Circuit precedent. However, the only case that Defendant cites to from the Third Circuit is *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004). In *Palcko*, a plaintiff argued that she was exempt from arbitration under the FAA because she fell within the Section 1 Exemption. *Id.* at 593. The plaintiff worked in a managerial position, supervising drivers who delivered packages solely in the Philadelphia area. *Id.* The Defendant, the delivery company, argued that the plaintiff, as a "management employee" with no close contact with channels of interstate commerce could not qualify as an exempt worker under Section 1. *Id.* The Third Circuit rejected that argument, holding that "direct supervision of package shipments made [plaintiff's] work so closely related to interstate and foreign commerce as to be in practical effect part of it." *Id.* In so holding, the court rejected the argument that "the exemption clause should be limited to those truck drivers who physically . . . transported goods across state lines," noting that this would "unnecessarily narrow the section 1 exemption in a way never intended by the FAA[.]" *Id.* at 593–94.

Nothing in *Palcko* supports Defendant's contention that Plaintiff is not engaged in interstate commerce. Rather, as Judge Donio found, *Palcko* tends to support a finding that Plaintiff

*was* engaged in interstate commerce. The plaintiff in *Palcko* was arguably even less involved in the interstate transportation of goods as a supervising manager, yet the Third Circuit still held that she was sufficiently engaged in interstate commerce. Conversely, here, Plaintiff himself physically moves goods across state lines. Accordingly, Judge Donio did not err in relying on the factually similar case of *Rittman* to conclude that Plaintiff was engaged in interstate commerce.

Defendant separately asserts that Judge Donio erred because she was required under recent Third Circuit precedent to order additional discovery on the issue of whether Plaintiff was sufficiently engaged in interstate commerce. (Appeal at 16.) Defendant cites to *Singh v. Uber Technologies Inc.*, 939 F.3d 210 (3d Cir. 2019). In *Singh*, the Third Circuit considered whether a group of rideshare drivers were exempt from arbitration under the FAA because they fell within the Section 1 Exemption. *Id.* The court found that the drivers could fall within the exception, so long "as they [we]re engaged in interstate commerce, or in work so closely related thereto as to be in practical effect part of it." *Id.* at 226. The court noted that the district court could not make that determination because "[a]t this stage, a court may only make that determination if the complaint and incorporated documents suffice. If not, or if so and [the plaintiff's] opposition to the motion to compel arbitration places the issue in dispute, discovery must be allowed before entertaining further briefing on the question." *Id.*

Plaintiff argues that this case is unlike *Singh* because, here, "there is no need for discovery . . . to determine whether Plaintiff was engaged in interstate commerce." (Opp. at 25.) The Court agrees. Unlike *Singh*, the Complaint pleads sufficient allegations to establish that Plaintiff was a transportation worker engaging in interstate commerce. Plaintiff alleges that "USPack provides services throughout the Northeastern United States, including throughout New Jersey. USPack supplies courier services for companies such as Omnicare, which sells pharmacy related services

to customers in the health care environment." (Compl. ¶11.) Plaintiff further alleges that "[d]rivers working for USPack pick up and deliver pharmaceutical products from these warehouses and deliver the items to healthcare facilities throughout New Jersey, as well as Pennsylvania, Delaware, New York, and Connecticut. Drivers also return items from the healthcare facilities to the warehouses." (*Id.* ¶12.) Taken together, these allegations, as present in the Complaint, sufficiently establish that Plaintiff transported goods, pharmaceutical products, in various states. Defendant's assertion that the court is "required" to order discovery is incorrect; the Court need not order discovery when the Complaint suffices to establish that the Plaintiff engaged in interstate commerce. *See Singh*, 939 F.3d at 226.

Moreover, the limited discovery that has already occurred establishes that Plaintiff is a transportation worker engaged in interstate commerce. Judge Donio's holding was not "based on a single, untested allegation in the Complaint," as Defendant asserts. (Appeal at 20.) Nor did Judge Donio make this determination "on a bare record and conclusory allegations." (*Id.* at 27.) Rather, Plaintiff's sworn deposition establishes that he delivered goods across state lines. (Doc. 207-4) (Plaintiff agreeing that he "delivered pharmaceuticals" to "medical facilities" in "New Jersey and Delaware.") Defense's counsel openly admits in his declaration that Plaintiff delivered goods across state lines. (*See* Billias Dec. ¶¶6–9) (stating that Plaintiff crossed state lines for delivery of pharmaceutical goods). Defendant's current brief even acknowledges that Plaintiff delivered goods across state lines. (*See* Appeal at 24.) The Court rejects Defendant's argument that more discovery is necessary on the issue. Accordingly, the Court finds that Judge Donio did not err in her finding that Plaintiff falls within the Section 1 Exemption. Nor did Judge Donio err in her conclusion that Plaintiff cannot be compelled to arbitrate his claim under the FAA.  Thus, the appeal is denied on these grounds.

16

### 3.   Whether Judge Donio Erred in the Choice of Law Analysis

Next, Defendant argues that Judge Donio erred by not applying the Contract's general choice of law provision to the Arbitration Provision. (Appeal at 37.) Judge Donio found that "the [Contract's] choice of law provision does not control what law governs the issue of whether the Court should utilize state law to enforce the arbitration provision." (Order at 15.) The Arbitration Provision specifically states that "[a]ll other disputes, claims, questions, or differences . . . shall be finally settled by arbitration in accordance with the Federal Arbitration Act." Third Circuit precedent establishes that "general choice-of-law provisions 'shed little, if any, light on the parties' actual intent' when it comes to the law that will govern the enforcement and review of arbitration agreements." *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 288–93 (3d. Cir. 2001). Accordingly, Judge Donio found that, because the Arbitration Provision specifically stated that it would be governed by the FAA, the Arbitration Provision exempted itself from the general choice of law provision in the Contract. (Order at 16.) Judge Donio found that the express selection of the FAA overrode the more generic language in the choice of law provision. (*Id.*) Thus, there was no evidence that the parties intended the choice of law provision to apply to the Arbitration Provision, since the Arbitration Provision explicitly elected that it would be governed by the FAA.

In disagreeing with Judge Donio's reasoning, Defendant asserts that the Third Circuit enforces choice of law provisions, such as the one here, where they were broad enough to cover all claims arising out of an agreement. Defendant cites only to one Third Circuit case, *Sullivan v. Sovereign Bancorp., Inc.*, 33 Fed. App'x. 640, 641-42 (3d Cir. 2002). The Court finds that *Sullivan* is inapposite. In *Sullivan*, a plaintiff argued that a contract's choice of law provision did not apply to his tort claims, just his contract claims. *Id.* The choice of law provision stated that it applied to *all* claims arising out of the agreement. *Id.* The Third Circuit found that the provision therefore

was broad enough to encompass the tort claims, as well as contract claims, arising from the agreement. *Id.* However, unlike *Sullivan*, the Arbitration Provision here *specifically elected* different governing authority.  Therefore, because *Sullivan* is factually dissimilar, the Court finds that Judge Donio did not err in not applying the choice of law provision to the arbitration provision.

Because Judge Donio found that the choice of law provision did not govern the Arbitration Provision, Judge Donio conducted a choice of law analysis holding that "New Jersey law applies[.]" (Order at 18.) Defendant argues that Judge Donio erred and should have applied New York law. (Appeal at 39.) Federal courts sitting in diversity apply the forum state's choice of law rules to determine the substantive state law to apply. Because this case was filed in New Jersey, the Court looks to New Jersey conflict of law principles. *Collins on Behalf of Herself v. Mary Kay Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). New Jersey choice-of-law uses the most-significant-relationship test, which has two prongs. First, the court must determine whether a conflict actually exists between the potentially applicable laws. *P.V. v. Camp Jaycee*, 962 A.2d 453 (2008) ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them.") (internal quotations omitted). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (internal quotation omitted). Second, if there is a conflict, the court must determine which state has the most significant relationship to the claim at issue by weighing the factors in the applicable section of the Restatement (Second) of Conflict of Laws. *Id.* (internal citation omitted).

Judge Donio concluded that "there exists a true conflict between New Jersey law and New York law as to the application of state law[.]" (Order at 19.) Judge Donio based this conclusion on the decision in *Arafa I*. Under *Arafa I*, "there is no mutual assent for arbitration if the contract

provision expressly called for arbitration under the FAA and the FAA is deemed inapplicable." (*Id.*) (citing *Arafa I*, 2019 WL 2375387 at \*2). Conversely, under New York law, "arbitration may proceed under state law even in the face of the FAA not applying and no other state law expressly set forth in the contract." (Order at 20) (citing *Espinosa v. SNAP Logistics Corp.*, No. 17-6383, 2018 WL 9563311, at \*4 (S.D.N.Y. Apr. 3, 2018)). Because, Judge Donio found there was an actual conflict, Judge Donio proceeded to the second stage of the analysis and concluded that New Jersey had "the most significant relationship to the transaction and to [the] parties in this case." (Order at 20.)

However, as discussed above, the New Jersey Supreme Court's recent decision in *Arafa II* reversed *Arafa I*. In *Arafa II*, the New Jersey Supreme Court held that arbitration may proceed under the NJAA, even if a court determines that the plaintiff is exempt from arbitration under the FAA, and the contract does not set forth alternative state law to govern arbitrability. *Arafa II*, 233 A.3d at 507. Accordingly, there is no longer a conflict between New Jersey and New York law. In the absence of a conflict, the Court applies the law of the forum state, New Jersey.[1] Thus, the Appeal is denied on this ground.

### 4. Whether Judge Donio Erred by Finding the Arbitration Agreement Unenforceable Under State Law

Defendant next argues that Judge Donio erred because the "parties' arbitration agreement is still enforceable under state law," and Judge Donio "erred in her application" of the mutual assent law. (Appeal at 27.) Judge Donio determined that "the dispute [could] not be settled by arbitration in accordance with the FAA as the FAA is not available as a result of the transportation

---

[1] Because the Court finds that there is no conflict between New Jersey and New York law, the Court does not address the following arguments made by Defendant, as they are now moot: (1) whether the arbitration agreement is enforceable under New York law and (2) whether Judge Donio correctly applied the "special relationship test" factors.

worker exemption." (Order at 25.) Citing to *Arafa I*, Judge Donio found that "the Agreement is otherwise silent with respect to arbitration in any other forum" and therefore "Defendant . . . failed to demonstrate any meeting of the minds as to arbitration in another forum[.]" (*Id.*) Accordingly, Judge Donio denied the motion to compel arbitration under state law. (*Id.*)

As discussed above, the New Jersey Supreme Court has since clarified the law on this issue. Under *Arafa II*, it is now immaterial that the Agreement here did not contain a provision stating that the NJAA would apply in the absence of enforceability under the FAA. *Arafa II*, 233 A.3d at 507. The Court may still find that the parties had a meeting of the minds regarding an agreement to arbitrate under the NJAA, alternatively, because the parties should have expected the NJAA to apply automatically. *See id.* Additionally, the New Jersey Supreme Court has now made clear that if a contract also contains a clear severance clause, as it did here, a court should not vitiate the entire agreement if it determines that the FAA does not apply. *Id.* at 507 n.2. Rather, the court should automatically apply the NJAA and grant a motion compelling arbitration if it otherwise determines that the standard to grant a motion to compel is satisfied. *See id.* Accordingly, because the New Jersey Supreme Court has now clarified the law related to this issue, the Court **VACATES** the Magistrate Judge decision.

In the underlying briefing, Plaintiff made a number of arguments asserting that the Arbitration Provision is unenforceable under New Jersey law, including that (1) the Provision does not encompass Plaintiff's statutory claims; (2) USPack is a non-signatory to the agreement; and (3) the Provision's terms are unenforceable. (Doc. 166.) Because Judge Donio concluded that there was no mutual assent, Judge Donio did not address Plaintiff's additional arguments or reach a conclusion regarding the Class Arbitration Waiver Provision. (Order at 26.) As such, the Court cannot conclude whether the matter should be referred to arbitration or whether the Class

Arbitration Waiver Provision is enforceable. Thus, the Court **REMANDS** the case for further proceedings consistent with this opinion.

**IV.   CONCLUSION**

For the reasons contained herein, (1) Defendant's Motion to Stay (Doc. 206) is **DENIED AS MOOT**; and (2) Plaintiff's Motion to Strike (Doc. 211) is **DENIED**. The Magistrate Judge Opinion is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Opinion. An accompanying Order shall issue.


Dated: 12/4/2020                                        /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge