# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL EASTERDAY,** **individually and on behalf of all persons similarly situated,** **Plaintiff,** **v.** **USPACK LOGISTICS LLC,** **Defendant.** | **Civil Action No. 1:15-cv-07559-RBK-KMW** **Oral Argument Requested** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MAGISTRATE'S DECISION DENYING DEFENDANT'S <u>MOTION TO COMPEL</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................6

III.  ARGUMENT..........................................................................9

    A.   Legal Standard.................................................................9

    B.   Magistrate Judge Donio Correctly Held that Even Under
        Arafa, the SCI Arbitration Agreement Does not Pass Muster ...........10

        1.   Contrary to US Pack's argument, Magistrate Judge
            Donio relied heavily on Arafa in reaching her
            decision .............................................................10

        2.   Magistrate Judge Donio correctly concluded that the
            language of the arbitration agreement differed
            significantly from the language in the agreements at
            issue in Arafa, rendering the agreement
            unenforceable........................................................13

        3.   US Pack misrepresents the case law on which it relies ...........18

    C.   Plaintiff's Other Arguments Also Require a Finding that the
        Arbitration Agreement is Unenforceable ...............................23

        1.   US Pack, as a non-signatory to the agreement, cannot
            enforce it ...........................................................23

        2.   The Arbitration Agreement is Rife with
            Unconscionable Provisions Rendering it
            Unenforceable........................................................30

        3.   The Arbitration Agreement Includes an
            Unenforceable Class Action Waiver.................................38

IV.   CONCLUSION........................................................................40

# TABLE OF AUTHORITIES

**Cases**

1567 South Realty, LLC v. Strategic Contract Brands, Inc.,
  2020 WL 3864974 (N.J. Super. Ct. App. Div. July 9, 2020) .......................20

Adamson v. Foulke Management Corp.,
  2009 WL 5174642 (D.N.J. Dec. 18, 2009) ................................. 4, 21, 35, 36

Alexander v. Anthony Intern., L.P.,
  341 F.3d 256 (3d Cir. 2003) ...........................................................37

Allstate Lending Group v. Gran Centurions, Inc.,
  2020 WL 3422119 (N.J. Super. Ct. App. Div. June 23, 2020) .............. 19, 20

Arafa v. Health Express Corp.,
  2019 WL 2375387 (N.J. Super. Ct. App. Div. June 5, 2019) .... 13, 14, 15, 17

Arafa v. Health Express Corp.,
  243 N.J. 147 (2020) ............................................................... passim

Atalese v. US Legal Servs. Grp.,
  219 N.J. 430 (2014) ............................................................... passim

Booker v. Robert Half Intern., Inc.,
  413 F.3d 77 (D.C. Cir. 2005)............................................. 5, 21, 32

Castro v. Linden Bulk Transportation LLC, a/k/a Odysset LBT LLC,
  Civ. Act. No. ESX L 006141-19, Order (N.J. Super. Ct. Jan. 4,
  2021) ......................................................................................36

Cervalin v. Universal Glob.,
  2021 WL 2793593 (N.J. Super. App. Div. July 6, 2021)............................23

Colon v. Strategic Delivery Solutions, LLC,
  459 N.J. Super. 349 (2019)..................................................... passim

Dayhoff Inc. v. H.J. Heinz Co.,
  86 F.3d 1287 (3d Cir. 1996) ........................................................27

Delta Funding Corp. v. Harris,
  289 N.J. 28 (2006) ................................................................. passim

E.I. DuPont De Nemours and Company v. Rhone Poulenc Fiber and
    Resin Intermediates, S.A.S.,
    269 F.3d 187 (3rd Cir. 2001) ...................................................... 24, 25, 27, 28

Eckenthal v. Smith Barney, Harris, Upham & Co., Inc.,
    1992 WL 695225 (D.N.J. June 1, 1992) ........................................................10

Epic Systems Corp. v. Lewis,
    138 S. Ct. 1612 (2018) ..................................................................................31

Ferguson v. Countrywide Credit Indus., Inc.,
    298 F.3d 778 (9th Cir. 2002) .........................................................................33

Flanzman v. Jenny Craig, Inc.,
    244 N.J. 119 (2020) .................................................................................. 21, 22

Garfinkel v Morristown Obstetrics & Gynecology Assocs.,
    168 N.J. 124 (2001) ............................................................................... passim

Green v. XPO Last Mile, Inc.,
    504 F. Supp. 3d 60 (D. Conn. Nov. 30, 2020) ...................................... 16, 25

Griswold v. Coventry First LLC,
    762 F.3d 264 (3d Cir. 2014) ...........................................................................24

Hargrove v. Sleepy's, LLC,
    220 N.J. 289 (2015) .......................................................................................16

Hirsch v. Amper Fin. Servs., LLC,
    71 A.3d 849 (N.J. 2013) .................................................................................24

Hojnowski ex rel. Hojnowski v. Vans Skate Park,
    868 A.2d 1087 (N.J. Super. App. Div. 2005) ..................................................24

Hubbard v. Comcast Corp.,
    2020 WL 4188127 (D.N.J. July 21, 2020) .....................................................38

Iliadis v. Wal-Mart Stores, Inc.,
    191 N.J. 88 (2007) .........................................................................................40

In re A2P SMS Antitrust Litig.,
    972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...........................................................30

Kanoff v. Better Life Renting Corp et. al.,
    2008 WL 442145 (D.N.J. Feb. 14, 2008) ................................................ 27, 28

Kleine v. Emeritus at Emerson,
    445 N.J. Super. 545 (App. Div. 2016)...........................................................22

Kozur v. F/V Atl. County, LLC,
    2020 WL 5627019 (D.N.J. Aug. 18, 2020)...............................................5, 19

Lawrence v. Sky Zone, LLC,
    2021 WL 1186406 (N.J. Super. App. Div. March 30, 2021).......................22

Lim v. TForce Logistics, LLC,
    --- F.4th ---, 2021 WL 3557294 (9th Cir. Aug. 12, 2021)..................... 34, 38

Lucey v. FedEx Ground Package Systems, Inc.,
    2007 WL 3052997 (D.N.J. Oct. 18, 2007) ...................................................37

Martindale v. Sandvik, Inc.,
    173 N.J. 76 (2002) ..................................................................................3, 38

Mohamed v. Uber Technologies, Inc.,
    109 F. Supp. 3d 1185 (N.D. Cal. 2015).......................................................32

Montgomery v. Bristol-Myers Squibb Co.,
    2020 WL 3169373 (D.N.J. June 15, 2020)...................................................38

Moon v. Breathless Inc.,
    868 F.3d 209 (3d Cir. 2017) ................................................................ 12, 21

Muhammad v. County Bank of Rehoboth Beach, DE,
    189 N.J. 1 (2006) ...................................................... 23, 38, 39, 40

Mut. Benefit Life Ins. Co. v. Zimmerman,
    783 F. Supp. 853 (D.N.J. 1992)........................................................... 27, 29

Nardone v. 3G BioTech, LLC,
    2011 WL 6339729 (D.N.J. Dec. 19, 2011) ..................................................27

Nesbitt v. FCNH, Inc.,
    811 F.3d 371 (10th Cir. 2016) .......................................................... passim

New Prime, Inc. v. Oliveira,
    138 S. Ct. 1164 (2018)..................................................................................7

O'Brien v. Encotech Const. Servcs., Inc.,
    203 F.R.D. 346 (N.D. Ill. 2001) ...................................................................39

Ortho-McNeil Pharma. Inc. v. Lupin Pharmaceuticals, Inc.,
    2008 WL 4117848 (D.N.J. Aug. 29, 2008) ...................................................10

Overka v. Am. Airlines, Inc.,
    265 F.R.D. 14 (D. Mass. 2010) ......................................................................39

Pyo v. Wicked Fashions, Inc.,
    2010 WL 1380982 (D.N.J. March 31, 2010) .................................................32

Richardson v. Coverall North America, Inc.,
    2018 WL 4639225 (D.N.J. Sept. 27, 2018)...................................................29

Richardson v. Coverall North America, Inc.,
    811 Fed. App'x. 100 (3d Cir. 2018) ..............................................................29

Richardson v. Sky Zone, LLC,
    2021 WL 1308358 (N.J. Super. App. Div. April 8, 2021)............................22

Sengebush v. House Values Real Estate School, LLC,
    2021 WL 343435 (N.J. Super. Ct. App. Div. Feb. 2, 2021)................... 19, 20

Siperavage v. Uber Technologies, Inc.,
    2021 WL 2680060 (D.N.J. June 30, 2021).....................................................23

Skuse v. Pfizer, Inc.,
    244 N.J. 30 (2020) .....................................................................................5, 21

Sokol Holdings, Inc. v. BMB Munai, Inc.,
    542 F.3d 354 (2d Cir. 2008) ..........................................................................30

Soranno v. Heartland Payment Systems, LLC,
    2020 WL 5652469 (D.N.J. Sept. 23, 2020)...................................................38

Spinetti v. Service Corp. Intern.,
    324 F.3d 212 (3rd Cir. 2003).........................................................................32

Subcontracting Concepts (CT), LLC v. De Melo,
    34 Cal. App. 5th 201 (2019) .................................................................... 31, 32

Tharpe v. Securitas Security Services USA, Inc.,
    2021 WL 1997385 (D.N.J. May 17, 2021)......................................................6

Tharpe v. Securitas Servs. USA,
    2021 WL 717362 (D.N.J. Feb. 24, 2021)............................................. 5, 6, 22

Uddin v. Sears Roebuck & Co.,
    2014 WL 1310292 (D.N.J. March 31, 2014) .................................................38

Vega v. CVS,
    2017 WL 1312954 (D.N.J. Apr. 25, 2017)............................................ 20, 21

Virgin Islands Water and Power Auth. v. Gen. Elec. Intern. Inc.,
    561 Fed. App'x. 131 (3d Cir. 2014) ...............................................................9

White v. Sunoco,
    870 F.3d 257 (3d Cir. 2017) .........................................................................30

White v. Sunoco, Inc.,
    189 F. Supp. 3d 486 (E.D. Pa. 2016).............................................................24

Young v. Prudential Ins. Co. of America, Inc.,
    297 N.J. Super. 605 (D.N.J. 1997) ...............................................................38

Ziglar v. Express Messenger Systems, Inc.,
    2017 WL 6539020 (D. Ariz. Aug. 31, 2017) ........................................ 31, 32

Ziglar v. Express Messenger Systems, Inc.,
    2019 WL 1522994 (D. Ariz. March 4, 2019)................................................31

Ziglar v. Express Messenger Systems, Inc.,
    739 Fed. App'x. 444 (9th Cir. 2018) ............................................................31

**Statutes**

Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1...................................................................................................7

New Jersey Arbitration Act ("NJAA"),
    N.J. Stat. 2A:23B-1 *et seq.* ......................................................................1, 7

New Jersey Wage and Hour Law, ("NJWHL")
    N.J. Stat. § 34:11-56a, *et seq.* ...................................................... 4, 6, 27, 36

New Jersey Wage Payment Law, ("NJWPL")
    N.J. Stat § 34:11-4.1, *et seq.* ....................................................... 4, 6, 27, 36

New Jersey Wage Theft Act,
    S. 1790/A. 2903 (2019) ...............................................................................36

## I.      INTRODUCTION

In this appeal, US Pack asserts three points that seriously misrepresent the facts. <u>First,</u> by selectively patching together disjointed phrases from this Court's remand order, it claims that this Court ordered the Magistrate to only apply <u>Arafa v. Health Express Corp.,</u> 243 N.J. 147 (2020), and nothing else. (US Pack's Brief at p. 1, Dkt. 252-1.) This argument fails on its face. Indeed, Your Honor noted that Plaintiff raised numerous arguments as to why arbitration could not be compelled, and **specifically** directed Judge Donio to address these points, as her original decision was limited to whether the New Jersey Arbitration Act ("NJAA"), N.J. Stat. 2A:23B-1 *et seq.*, could be applied, where it was never mentioned in the arbitration provision. Your Honor's Order stated:

> In the underlying briefing, Plaintiff made a number of arguments asserting that the Arbitration Provision is unenforceable under New Jersey law, including that (1) the Provision does not encompass Plaintiff's statutory claims; (2) USPack is a non-signatory to the agreement; and (3) the Provision's terms are unenforceable . . . . Because Judge Donio concluded that there was no mutual assent, Judge Donio did not address Plaintiff's additional arguments or reach a conclusion regarding the Class Arbitration Waiver Provision . . . . As such, the Court cannot conclude whether the matter should be referred to arbitration or whether the Class Arbitration Waiver is enforceable. Thus, the Court **REMANDS** the case for further proceedings consistent with this opinon.

(Judge Kugler Opinion at pp. 20-21, Dkt. 227.)

<u>Second,</u> US Pack asserts that the agreement in <u>Arafa</u> was "on all fours" with the agreement in this case, even though this is  blatantly untrue. (US Pack's Brief at p. 3, Dkt. 252-1.) Not only does the agreement in this case not even mention US Pack, let alone make it a party to the agreement, the agreement here does not contain the language critical to the <u>Arafa</u> decision regarding the waiver of a right to a jury trial or court proceeding. <u>See Arafa</u>, 243 N.J. at 170. Moreover, this

1

agreement specifically bars Plaintiff from bringing claims against any other entities or third parties (which US Pack certainly is), while the <u>Arafa</u> agreement presented no such issue. (2013 Arbitration Agreement, ECF No. 17-2 at 11.)

      <u>Third</u>, US Pack claims that <u>Arafa</u> overruled previous holdings of the New Jersey Supreme Court, such as <u>Atalese v. US Legal Servs. Grp.</u>, 219 N.J. 430 (2014), and <u>Garfinkel v Morristown Obstetrics & Gynecology Assocs.</u>, 168 N.J. 124 (2001), making Magistrate Judge Donio's reliance on them clear legal error. But <u>Arafa</u> does no such thing. The <u>Arafa</u> court did not overrule any precedent, and in fact, cites those cases approvingly. <u>See</u> <u>Arafa</u>, 243 N.J. at 170. <u>Arafa</u> admittedly narrowed the holdings, it did not overrule them, particularly as related to forcing non-parties to arbitrate claims to which they never agreed. <u>See</u> <u>id.</u>

      Magistrate Judge Donio denied the motion to compel arbitration based simply upon the holding in <u>Arafa</u> that an arbitration agreement is unenforceable in "the absence of any language in the arbitration provision the plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable," <u>see</u> <u>Arafa</u>, 243 N.J. at 170; Judge Donio Opinion, ECF No. 248, herein after "Opinion" at 21-24, and that while an arbitration provision need not refer specifically to the [statute] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights," the agreement "should at least provide that the employee agree[d] to arbitrate all statutory claims arising out of the employment agreement," <u>see</u> <u>Arafa</u>, 243 N.J. at 170; Opinion at 25-30. Thus, in <u>Arafa</u>, the court acknowledged that where a plaintiff had "agree[d] to waive her right to a jury trial in any action or proceeding relating to [her] employment and

that all disputes relating to her employment or termination thereof shall be subject to arbitration" such language would be broad enough to satisfy the court. <u>Arafa</u>, 243 N.J. at 170-71  (citing <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 96-97 (2002)) (internal quotes omitted). Since the agreement here contains no such language, Judge Donio meticulously applied <u>Arafa</u>, and denied US Pack's motion to compel. (Opinion at 25-30.)

Because of this ruling, Judge Donio did not address at least four other independent, and arguably more persuasive reasons, not to enforce the agreement, that Plaintiff raised and which will be outlined here as they were in Plaintiff's last opposition to the motion to compel arbitration, Dkt. 243 at pp. 8-40. This case is now six years old, and the parties have not gotten past the arbitration issue. Whatever this Court decides regarding Judge Donio's ruling, the Court should  also address all of the defenses raised by Plaintiff, who has been making these arguments for the last five years, never to have them all addressed.

To briefly summarize, Plaintiff raises the following defenses to arbitration:

1. The parties to the agreement are a third-party payroll company called SCI and Plaintiff, and US Pack is nowhere mentioned. Moreover the agreement specifically states that Plaintiff was prohibited from  "joining or consolidating claims in arbitration by or against other individuals or entities."  Thus, Plaintiff never agreed to arbitrate claims against US Pack, and was barred from doing so.

2. The agreement falls short of the requirements of <u>Arafa</u> that require specific language notifying Plaintiff that he was waiving his statutory right to seek relief in a court of law against the alleged employer. <u>Arafa</u> 243 N.J. at 170.

3. The agreement limits itself to claims relating to the agreement "or breach thereof" by SCI, and thus there was simply no way for Plaintiff to know that he was waiving statutory employment wage claims against a third-party.

3

4.  <u>Arafa</u> also requires that the agreement must "clearly and unambiguously" state that the plaintiff has waived his right to pursue a claim in court before a jury. <u>Id.</u> at 171, and this agreement contains no such language.

5.  US pack was not a third-party beneficiary of the agreement, because under New Jersey law a non-signatory can only be considered a third-party beneficiary to a contract where the nonsignatory holds a close and clearly discernible relationship to the signatory, and the contract is explicitly intended to benefit the nonsignatory.

6.  The agreement is permeated with unconscionable provisions under New Jersey law because among other things:

    - It precludes Plaintiff from recovering costs or attorney's fees should he prevail on the merits even though the New Jersey Wage and Hour Law (N.J. Stat. § 34:11-56a25) and the New Jersey Wage Payment Law (N.J. Stat § 34:11-4.2 and § 34:11-4.4) state otherwise.

    - Forces each party to be responsible for their own cost of arbitration which means at the very least that the claimant would have to pay for at least 1 ½ arbitrators  whose costs would be thousands of dollars a day and plaintiff is on the verge of poverty.

    - It precludes Plaintiff from recovering equitable or punitive relief.

    - It imposes severe restrictions on discovery such as limiting the parties to three depositions per party lasting two hours each.

    - It includes an unenforceable class arbitration waiver.[1]

---

[1]     The Court cannot simply sever these unconscionable provisions as, under New Jersey law courts must analyze the unconscionability of an agreement at the time the parties entered into it. <u>See</u> <u>Delta Funding Corp. v. Harris</u>, 289 N.J. 28, 42-44 (2006); <u>Adamson v. Foulke Management Corp.</u>, 2009 WL 5174642, at *8-9 (D.N.J. Dec. 18, 2009). A company cannot load up a contract with unconscionable and unenforceable provisions, thereby dissuading its employees to pursue their rights, knowing that even if the employee proceeds in court, US Pack can ask the

At bottom, US Pack's argument fails for three significant reasons. First, it essentially accuses Magistrate Judge Donio of failing to follow this Court's remand order to apply <u>Arafa</u>. This accusation could not be further from the truth. Second, this Court specifically instructed Magistrate Judge Donio to address the other arguments made by Plaintiffs that were unaddressed in her first opinion, and conveniently US Pack skips right over that point without addressing it. Finally, US Pack disingenuously insinuates that the two agreements at issue (<u>Arafa</u> and the SCI agreement signed by Plaintiff) are essentially the same, when in fact they are facially different, particularly given that US Pack is not even a signatory to the SCI agreement, and its language, including specifically its prohibition on adding claims against other parties, could not possibly could be construed as providing the required notice to Plaintiff that he was waiving his right to litigate important statutory rights and have a jury decide them.

If it were not bad enough that US Pack misrepresents what Magistrate Donio actually did, what this Court actually instructed her to do, and what the agreement in this case actually says, US Pack also seriously misstates the holdings in cases following <u>Arafa</u> (such as <u>Skuse v. Pfizer, Inc.</u>, 244 N.J. 30 (2020) and <u>Kozur v. F/V Atl. County, LLC</u>, 2020 WL 5627019 (D.N.J. Aug. 18, 2020), where the arbitration agreements contain the explicit language that is woefully missing in this agreement. Perhaps even more troubling is that US Pack not only misrepresents <u>Tharpe v. Securitas Servs. USA</u>, 2021 WL 717362 (D.N.J. Feb. 24, 2021), but it

court to hack away the unconscionable parts. <u>See</u> <u>Booker v. Robert Half Intern., Inc.</u>, 413 F.3d 77, 84 (D.C. Cir. 2005).

actually omits Judge McNulty's holding that if an arbitration clause saddled low income workers with splitting the cost of expensive arbitration proceedings such as this one would be, it would be unenforceable.[2] See id. at *6. Indeed, Judge McNulty ordered discovery on the financial impact of the cost splitting provision, in light of the fact that the "Complaint's allegations make it plausible that he is financial[ly] vulnerable, so there is a 'reasonable expectations that discovery will reveal' that arbitration would indeed be too costly for him.'" Id. (internal citation omitted). This Court should not countenance US Pack's playing so fast and loose with its briefing. It does Defendant no honor.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this class action against US Pack on October 18, 2015, alleging that he and the proposed class were misclassified as independent contractors and that US Pack had committed violations of New Jersey Law.[3]

US Pack moved to compel arbitration on November 25, 2015. (ECF No. 8.) After extensive briefing, Magistrate Judge Donio initially denied US Pack's

---

[2]    Although Judge McNulty ultimately granted the motion to compel arbitration, see Tharpe v. Securitas Security Services USA, Inc., 2021 WL 1997385, at *2 (D.N.J. May 17, 2021), he only did so because the plaintiff had failed to produce evidence that he could not afford the costs of the arbitration. As described herein, Plaintiff has forcefully proven this with multiple documents, and unlike in Tharpe, where the employer was required to pay all costs of the arbitration, see id. at *1, here Mr. Easterday would have to pay the full cost of one and one-half arbitrators, likely spending over $50,000, despite his having no money in his bank account or any other assets.

[3]    The New Jersey Wage Payment Law, N.J. Stat § 34:11-4.1, et seq. ("NJWPL"), the New Jersey Wage and Hour law, N.J. Stat. § 34:11-56a, et seq. ("NJWHL"), and New Jersey common law. (Compl., ECF No. 1.)

Motion to Compel without prejudice, directing the parties to conduct discovery on the issue of whether Plaintiff was US Pack's employee for the purposes of the transportation worker exemption of the FAA, 9 U.S.C. § 1. (ECF No. 42.) However, the Supreme Court issued its decision in New Prime, Inc. v. Oliveira, 138 S. Ct. 1164 (2018), holding that the transportation worker exemption applied to both employees and independent contractors, and Judge Donio then eventually issued a decision in this case decision denying US Pack's motion to compel arbitration on April 27, 2020. (Opinion, ECF No. 194.) Judge Donio held that because the FAA did not apply, the lack of any state law in the arbitration provision in the event of the inapplicability of the FAA caused Defendant's attempt to compel arbitration to fail. (Order at 16-17, ECF No. 194.) Judge Donio also determined that even if state law applied, it would be New Jersey law, and US Pack failed to demonstrate under New Jersey law "that there was mutual assent to arbitrate under state law in the face of the inapplicability of the FAA." (Id. at 23.)

US Pack appealed Judge Donio's decision to Judge Kugler on May 23, 2020 (ECF No. 207-1). The New Jersey Supreme Court then issued its decision in Arafa on July 14, 2020, which clarified that even where an arbitration is exempt under the FAA Section 1 exemption, the NJAA, may apply even if not specifically referenced by the arbitration agreement. See id. at 166-69. On December 4, 2020, this Court issued its Opinion vacating the Magistrate Judge Donio's denial of US Pack's Motion to Compel. (ECF No. 227.) Your Honor held that the FAA did not apply (ECF No. 227 at 12-13), and absent the FAA, New Jersey law applied (ECF No. 227 at 17-19). The Court directed that Magistrate Judge Donio should proceed

to evaluate all of Plaintiff's other arguments under New Jersey law that he had raised in the previous briefing (ECF No. 227 at 19-21).

US Pack filed a Renewed Motion to Compel Arbitration on December 30, 2020, which was treated as its post-remand submission. (ECF No. 231.) Plaintiff submitted his opposition brief on February 5, 2021 (ECF No. 243.) On June 30, 2021, Judge Donio denied US Pack's Renewed Motion to Compel Arbitration. Judge Donio examined the impact of <u>Arafa</u> and determined that the arbitration agreement here could not be enforced because it did not clearly and unambiguously explain that Plaintiff was waiving his right to seek relief in court for a breach of his statutory claims, <u>id.</u> at 21, and does not encompass statutory claims arising out of Plaintiff's employment, <u>id.</u> at 25.

The arbitration agreement here is between Plaintiff and a third party payroll administrator company called SCI. (2013 Arbitration Agreement, ECF No. 17-2 at 7.) US Pack is a non-signatory to that agreement and is not mentioned by name. The text of the arbitration agreement is as follows:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, **the parties hereto** shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides.

> All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

8

**Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities**, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

**The arbitration panel shall be made up of three (3) people**. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

Consistent with the expedited nature of arbitration, each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. **All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.**

The arbitrator's decision shall be final and legally binding and judgment may be entered thereon.

(2013 Arbitration Agreement, ECF No. 17-2, at 10-11.) (emphasis added)

## III.   ARGUMENT

### A.   Legal Standard

Under Third Circuit precedent, motions to compel arbitrations are non-dispositive motions. See Virgin Islands Water and Power Auth. v. Gen. Elec. Intern. Inc., 561 Fed. App'x. 131, 133-34 (3d Cir. 2014). As such, the District Court Judge may only set aside a denial of a motion to compel arbitration under

Local Rule 72.1(a) if it is "clearly erroneous or contrary to law." <u>Eckenthal v. Smith Barney, Harris, Upham & Co., Inc.</u>, 1992 WL 695225, at *2 (D.N.J. June 1, 1992). Under this standard, magistrate judges opinions are "entitled to great deference" and "reversible only for abuse of discretion." <u>Ortho-McNeil Pharma. Inc. v. Lupin Pharmaceuticals, Inc.</u>, 2008 WL 4117848, at *3 (D.N.J. Aug. 29, 2008).

### B. Magistrate Judge Donio Correctly Held that Even Under <u>Arafa</u>, the SCI Arbitration Agreement Does not Pass Muster

#### 1. Contrary to US Pack's argument, Magistrate Judge Donio relied heavily on Arafa in reaching her decision

US Pack accuses Magistrate Judge Donio of defying Your Honor's directive by refusing to apply <u>Arafa</u> in her decision denying its Renewed Motion to Compel. Nothing could be further from the truth. Magistrate Judge Donio's decision comprises a thoughtful, 32 page discussion of <u>Arafa</u> as well as the other New Jersey Supreme Court decisions that <u>Arafa</u> itself discusses (like <u>Atalese</u> and <u>Garfinkel</u>), and an application of that jurisprudence to this case. It is thus difficult to comprehend how US Pack could argue otherwise.

As Magistrate Judge Donio correctly explained, "the decision in *Arafa II* does not require a court to automatically compel arbitration because an agreement contains an arbitration agreement." (Opinion at 12.) Thus, while Magistrate Judge Donio disagreed with US Pack's assertion that <u>Arafa</u> was automatically dispositive – which is unsupported by a fair reading of <u>Arafa</u> itself – she by no means ignored <u>Arafa</u> and did not contravene this Court's directive. Instead, Magistrate Judge Donio did exactly what Your Honor directed, which was to "address Plaintiff's

additional arguments" as to why the arbitration agreement is unenforceable under New Jersey law. (Judge Kugler Opinion at pp. 20-21, Dkt. 227.)  Simply put, if US Pack were correct that Arafa automatically resolved the issues present in this case in its favor, there would have been no reason for this Court to remand the case.

Indeed, Magistrate Judge Donio began her discussion explaining why the arbitration agreement is unenforceable by citing to Arafa, and explaining that while "an employee may . . . waive his or her right to pursue a statutory claim in a judicial forum in favor of arbitration," such a waiver must be stated in clear and unambiguous terms. (Opinion at 14 (quoting Arafa, 243 N.J. at 170).) A clear and unambiguous waiver requires that the agreement would permit the parties "know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." (Opinion at 14 (quoting Atalese, 219 N.J. at 445).) Judge Donio surveyed cases applying this standard and found "the arbitration clause in the Agreement does not clearly and unambiguously explain that Plaintiff is waiving his right to seek relief in court for a breach of his stuatory rights." Id. at 21.

Judge Donio explained that the arbitration agreement "'does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law' and that there is no judge or jury in arbitration." Id. at 14 (quoting Atalese, 219 N.J. at 446). Rejecting US Pack's argument that the agreement's reference to small claims court sufficed to put Plaintiff on notice that he had waived his right to a jury trial in court, she reasoned:

> [T]he clause does not explain that arbitration is a replacement for judicial relief and that, by subjecting certain claims to arbitration, Plaintiff would be giving up his right to pursue those claim in a court of law. There is *no*

> language that Plaintiff waived his right to have a judge or jury decide his claim. Moreover, the provision does not specify a monetary value of the claims that would be tried in court, and requires an average person to have sufficient knowledge regarding the jurisdictional limits of small claims court to understand those claims that would be tried in a court of law versus those resolved by arbitration; such language does not make "clear and understandable" to the average person those claims for which he waived his right to a jury trial.

Id. at 22-23 (quoting Atalese, 219 N.J. at 446).

Furthermore, contrary to the protestations of US Pack, Judge Donio

compared the language of the arbitration agreement in this case to the provisions at

issue in Arafa and held that they were distinguishable:

> Furthermore, while Defendant argues that the arbitration provision here "mirrors" the arbitration provisions which were upheld by the New Jersey Supreme Court in *Arafa II* . . . , both of the arbitration provisions considered in *Arafa II* – unlike the arbitration clause here – explicitly referenced the waiver of a jury trial. The Agreement at issue here simply does not contain wording sufficient for Plaintiff to have had a clear understanding that by agreeing to arbitration, he waived the right to bring certain claims in a court of law before a judge or jury.

Id. at 23-24. Judge Donio also held that "the arbitration provision in this case does

not encompass statutory claims arising out of Plaintiff's employment." Id. at 25)

She relied heavily on Garfinkel, 168 N.J. at 134, explaining that the New Jersey

Supreme Court held:

> [A]n employment agreement that included an obligation to arbitrate claims 'arising out of, or relating to, [the] [a]greement or the breach thereof' did not cover statutory claims under the New Jersey Law Against Discrimination because the language 'suggests the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself' and did not include statutory claims.

Id. at 25-26 (quoting Garfinkel, 168 N.J. at 134).) Judge Donio also relied on the

Third Circuit's decision in Moon v. Breathless Inc., 868 F.3d 209, 212, 218 (3d

Cir. 2017), where an arbitration agreement that applied to a "dispute between

12

Dancer and Club under this Agreement" did not encompass statutory wage and hour claims. (Opinion at 26-27)[4]

US Pack's argument that Judge Donio ignored <u>Arafa</u> is misplaced.

> **2.      Magistrate Judge Donio correctly concluded that the language of the arbitration agreement differed significantly from the language in the agreements at issue in <u>Arafa</u>, rendering the agreement unenforceable**

US Pack also misrepresents the supposed similarities between the arbitration agreement in this case and those considered in <u>Arafa</u>. In fact, the agreements in <u>Arafa</u> are significantly different from the agreement in this case, which is the reason that Magistrate Judge Donio reached a different outcome than did the <u>Arafa</u> court. The <u>Arafa</u> decision concerned two consolidated cases from the New Jersey Superior Court Appellate Division, <u>Arafa v. Health Express Corp.</u>, 2019 WL 2375387 (N.J. Super. Ct. App. Div. June 5, 2019) and <u>Colon v. Strategic Delivery Solutions, LLC</u>, 459 N.J. Super. 349 (2019). Contrary to US Pack's contention, the arbitration agreements in both <u>Colon</u> and <u>Arafa</u> were significantly different than the arbitration agreement in this case.

For example, unlike in this case the arbitration agreement in <u>Arafa</u> was between the plaintiff and the delivery company he worked for, HealthEx

---

[4]      Judge Donio also specifically compared the arbitration agreement at issue here to those in <u>Arafa</u>, and concluded that unlike the agreements in <u>Arafa</u>, which were held to encompass statutory claims, this arbitration agreement was "not broad enough too include the statutory claims at issue in this case," because it "contains language limiting the claims subject to arbitration to those 'arising from or relating to this agreement or the breach thereof,'" and "there was no meeting of the minds with respect to Plaintiff's waiver of his right to pursue statutory claims in court in favor of an arbitration forum." (Opinion at 29).

Corporation, and the agreement provided that

> **BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL**.

(Arafa Arbitration Agreement at 1 ¶ A, filed at ECF No. 243-2) (emphasis in original).  Moreover, the Arafa agreement included an entire section entitled "Claims Covered By This Agreement" that included not only all claims arising under the agreement, but also "disputes arising out of or relating to any other aspect of Contractor's relationship with the Company, past or present, whether arising under federal state or local statutory, regulatory and/or common law; and… disputes arising out of or relating to this agreement or any portion of this agreement…." (Arafa Arbitration Agreement at 1 ¶ A(1), ECF No. 243-2). The agreement stated specifically that it "also applies without limitation to **claims or disputes regarding any federal state or local wage-hour law**. . . ." (Arafa Arbitration Agreement at 1 ¶ A(1), ECF No. 243-2) (emphasis added).

Likewise, the disputed clause in Colon encompassed "any dispute, difference, question or claim arising out of or in any way relating to this agreement or **the transportation services provided hereunder**." (Colon Vendor Agreement at 7 ¶ 20(a), filed at ECF No. 243-1) (emphasis added). As stated, the agreement specifically says that "the parties agree to waive any right to a trial by jury in any suit filed here under and to agree to adjudicate any dispute pursuant to paragraph 20 (the arbitration clause) below." (Colon Vendor Agreement at 7 ¶ 19, ECF No. 243-1.) The agreement is between plaintiff Colon, and the company against whom

she is bringing her misclassification claims, Strategic Delivery Solutions.

Yet strikingly the agreement in this case has **<u>none</u>** of the protections that led the New Jersey Supreme Court to permit enforcement of the arbitration agreements in <u>Colon</u> and <u>Arafa</u>. First, the agreement here does not even mention claims against US Pack. Even more importantly, the arbitration clause applies only "in the event of any dispute claim question or disagreement arising from or relating to this **agreement or the breach thereof**," and statutory claims are nowhere mentioned. (2013 Arbitration Agreement, ECF No. 17-2 at 10-11.) (emphasis supplied).[5] Moroever, the agreement later provides that "you" (meaning Plaintiff) may not "join or consolidate claims in arbitration….against other individuals or entities." (2013 Arbitration Agreement, ECF No. 17-2 at 11.) Thus by its own terms the arbitration clause reaches only disputes, questions or disagreements arising from or relating to the AGREEMENT or breach thereof, and it specifically bars the plaintiff from bringing a claim against US Pack as an "other individual." But Plaintiff here is not bringing any claim relating to the SCI agreement or any breach thereof.  In fact, he brings no claims whatsoever against SCI. Rather, he is claiming that *US Pack* misclassified him as an independent contractor in violation of New Jersey law, and the ABC test established by the New Jersey Supreme Court

---

[5]     US Pack once again argues that this arbitration agreement is like the one that the New Jersey Supreme Court enforced in <u>Martindale</u>, 173 N.J. at 96. Magistrate Judge Donio specifically considered and rejected this argument, because "the arbitration provision here is not as broad as the provision in *Martindale*, where the plaintiff agreed to arbitrate 'any action or proceeding related to [the plaintiff's] employment with Sandvik.'" (Magistrate Judge Donio's Opinion at 29, ECF No. 428 quoting <u>Martindale</u>, 173 N.J. at 81).)

in Hargrove v. Sleepy's, LLC, 220 N.J. 289, 315 (2015). Thus as held in a very similar delivery driver case, Green v. XPO Last Mile, Inc., 504 F. Supp. 3d 60, 73 (D. Conn. Nov. 30, 2020), the plaintiffs are not making a claim related to their contract; to the contrary, they are claiming "that the agreements . . . serve as legal window dressing for XPO to perpetrate this miscategorization . . . then the record suggests that the agreements . . . actually *deprived* [the plaintiffs] of benefits by means of contract terms . . . ."  Indeed the agreement here makes no mention whatsoever of employment claims, or misclassification claims, and makes no mention of claims against US Pack, or any other courier company.

Furthermore, the arbitration agreement in this case makes no reference at all to the fact that by signing it, Plaintiff would be giving up his right to bring a claim in court and his right to a jury trial. Instead, the agreement states that the parties are to meet to try to resolve their situation, and that if there is no resolution, "disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides." (2013 Arbitration Agreement, ECF No. 17-2, at 10.) The agreement then says that "[a]ll other disputes, claims, or differences beyond the jurisdictional maximum for small claims court…shall be finally settled by arbitration in accordance with the Federal Arbitration Act." (2013 Arbitration Agreement, ECF No. 17-2, at 11.) The very end of the agreement states: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES." (2013 Arbitration Agreement, ECF No. 17-2, at 10-11) (emphasis in

original).  None of these provisions actually state that Plaintiff waived his right to pursue claims in court including his right to a jury trial.

The arbitration agreement in this case stands in stark contrast to the arbitration agreements in <u>Arafa</u> and <u>Colon</u>, and the New Jersey Supreme Court emphasized that the agreements in both of those cases explicitly stated that the plaintiffs had waived their right to proceed in court and to a trial by jury. <u>See Arafa</u>, 243 N.J. at 172. In <u>Arafa</u>, the arbitration agreement stated "**ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL**." (<u>Arafa</u> Arbitration Agreement at 1 ¶ A, ECF No. 243-2) (emphasis in original).  In <u>Colon</u>, the agreement stated "the parties agree to waive any right to a trial by jury in any suit filed here under and to agree to adjudicate any dispute pursuant to paragraph 20 (the arbitration clause) below." (<u>Colon</u> Vendor Agreement at 7 ¶ 19, ECF No. 243-1.)

There is simply no way to stretch the terms of the agreement, to satisfy the requirements articulated by the New Jersey Supreme Court in <u>Arafa</u>, that the Plaintiff had at least some knowledge when signing the agreement that statutory employment or wage claims against a third party must be brought in arbitration and not in court. <u>See Arafa</u>, 243 N.J. at 170. <u>Id.</u>[6] US Pack's argument that Magistrate

---

[6]     US Pack once again argues that the Court should look to evidence demonstrating Plaintiff's understanding agreement rather than the wording of the arbitration clause itself. However, Judge Donio forcefully rejected that proposition (Opinion at 24), noting that <u>Garfinkel</u> specifically rejected that argument. <u>See Garfinkel</u>, 168 N.J. at 134-35. Thus as Magistrate Judge Donio correctly noted,

Judge Donio's analysis was directly contrary to Arafa simply holds no water.

### 3.   US Pack misrepresents the case law on which it relies

At bottom, US Pack argues that Arafa automatically renders any arbitration agreement enforceable. Obviously, however, this point is completely unsupported by the caselaw. Nevertheless, US Pack severely misinterprets nearly every case it relies on – including Arafa itself – in an attempt to mislead this Court.

US Pack spends much of its brief arguing that Plaintiff relies on "obsolete" cases that are no longer good law following the New Jersey Supreme Court's holding in Arafa – namely, Atalese and Garfinkel.  This is untrue.  Arafa specifically reinforced the central holding of Atalese, 219 N.J. at 436, that "the absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." Arafa, 243 N.J. at 170. The Arafa court also noted that under the Garfinkel decision, "an arbitration provision need not 'refer specifically to the statute or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights,' . . . ." Id. (quoting Garfinkel, 168 N.J. at 135-36).[7]

None of the cases that US Pack relies on actually support its baseless contention that Arafa automatically renders all arbitration agreements enforceable in the face of Atalese and Garfinkel. To begin, US Pack cites Allstate Lending

---

"the proper inquiry in determining whether a plaintiff knowingly waived his rights is the language of the arbitration agreement itself. (Opinion at 25)

[7]     And as explained, *supra*, US Pack did nothing to address Magistrate Judge Donio's central conclusion that the arbitration agreement was more like the agreements in Atalese and Garfinkel than those analyzed in Arafa (and thus unenforceable).

Group v. Gran Centurions, Inc., 2020 WL 3422119, at *8 (N.J. Super. Ct. App. Div. June 23, 2020). That case does nothing to aid US Pack's argument, as there – unlike here –  the arbitration agreement also stated "BY AGREEING TO ARBITRATE, YOU WAIVE ANY RIGHT YOU HAVE TO A COURT OR JURY TRIAL" and went on to further explain the differences between an arbitration and a court proceeding Id. (emphasis in original).[8]

US Pack similarly relies on the recent decision in Sengebush v. House Values Real Estate School, LLC, 2021 WL 343435, at *4 (N.J. Super. Ct. App. Div. Feb. 2, 2021), but that case stands only for the unremarkable proposition that the arbitration agreement did not have to specifically list the New Jersey Law Against Discrimination for its scope to nonetheless extend over such a claim and that the arbitration agreement's extension to claims arising out of the "relationship"

---

[8]    Moreover, in defining the scope of its coverage, the agreement in Allstate used language that "not only include[d] disputes arising out of or relating to" the mortgage agreement at issue in the case but also disputes arising out of the plaintiff's respective "relationships" with the defendant. Id. at *9. That language is obviously broader than that in the SCI arbitration agreement at issue in this case, which covers only "any dispute, claim, question, or disagreement arising from or relating **to this agreement or the breach thereof** . . . ." (2013 Arbitration Agreement, ECF No. 17-2, at 10-11.) (emphasis added). Magistrate Judge Donio agreed, noting that the arbitration agreement in question included "much more specific language as opposed to referring only to arbityration disputes concerning the agreement at issue." (Opinion at 29-30, n.15).  US Pack also cites Kozur v. F/V Atl. Bounty, LLC, 2020 WL 5627019, at *9 (D.N.J. Aug. 18, 2020), but there, the plaintiff argued primarily that (1) New Jersey law was preempted by the FAA; (2) the New Jersey Law Against Discrimination prohibits a pre-incident waiver of rights; and (3) the need for uniformity in admiralty law trumps the state law's ability to compel arbitration. See id. at *6. None of these points is at issue in this case, and again Judge Donio agreed that the arbitration agreement at issue in Kozur was far more specific than that at issue in this case. (Opinion at 29-30, n.15)

between the plaintiff and defendant sufficed. Like in <u>Allstate</u>, the agreement in <u>Sengebush</u> included exactly the kind of language that the agreement in this case lacks – language stating that the agreement disputes beyond simply contractual disputes, and a clear and unmistakable waiver of the right to bring statutory claims in court by jury trial. <u>See</u> <u>id.</u>

Moreover, US Pack misinterprets <u>1567 South Realty, LLC v. Strategic Contract Brands, Inc.</u>, 2020 WL 3864974, at *3-4 (N.J. Super. Ct. App. Div. July 9, 2020) in support of its argument that the arbitration need not reference a waiver of a right to a jury trial in order to be enforceable. In <u>1567 South Realty</u>, the court held that the <u>Atalese</u> protections were inapplicable because the arbitration agreement was "a negotiated contract between sophisticated business entities" that incorporated the AAA Commercial arbitration rules rather than between a business and "an average member of the public," like in the consumer context. <u>Id.</u> at *3. US Pack thus unpersuasively attempts to distinguish this case, where a low-wage courier driver is advancing a misclassification claim against his employer and signed an arbitration agreement with a separate sophisticated entity, from the consumer context at issue in <u>Atalese</u>. However, the plaintiffs in <u>Arafa</u> were also low-wage courier drivers bringing misclassification claims against their purported employers, and the <u>Arafa</u> court explicitly invoked the strictures of <u>Atalese</u>. <u>See</u> <u>Arafa</u>, 243 N.J. at 170.[9]

---

[9]     US Pack also relies heavily on <u>Vega v. CVS</u>, 2017 WL 1312954 (D.N.J. Apr. 25, 2017). <u>Vega</u>, was a discrimination case where the arbitration clause stated clearly that it covered statutory discrimination claims and explained the difference between arbitration and going to court. <u>See</u> <u>id.</u> at *1-2. Ironically, <u>Vega</u> actually

Furthermore, Magistrate Judge Donio correctly noted that "subsequent to the Appellate Division's decision in *1567 South Realty*, the New Jersey Supreme Court has applied *Atalese* in the employment context. (Opinion at 19-20 (citing Skuse v. Pfizer, Inc., 244 N.J. 30 (2020); Arafa, 243 N.J. at 170-72).) Ironically, US Pack even cites to Skuse as if it aided US Pack's argument, but in Skuse, the court confirmed that Atalese applies in the employment context, stating that "[o]ur case law thus requires that a waiver-of-rights provision be written clearly and unambiguously," and "[i]n an employment setting, employees must 'at least know that they have agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" Id. at 49-50 (citing Atalese, 219 N.J. at 447; Garfinkel, 168 N.J. at 135).[10]

---

provides a nice contrast between the kind of arbitration clause language that would be enforceable under even the more restrictive Moon standard (that in Vega) and the kind of arbitration clause language that is not sufficiently clear to be enforced (that in this case). If anything, Vega supports Plaintiff's argument. Magistrate Judge Donio persuasively distinguished Vega at pp. 29-30, n.15 of her Opinion.

[10]    US Pack also incoherently argues that under the NJAA, any missing terms or gaps – such as the scope of the arbitration agreement – can be filled in by the court, relying on Flanzman v. Jenny Craig, Inc., 244 N.J. 119 (2020). However, Flanzman approvingly cites Atalese, and US Pack's argument directly contradicts the core holding of Atalese. See Flanzman, 244 N.J. at 137. Moreover, cases like Delta Funding Corp., 289 N.J. at 42-44, and Adamson, 2009 WL 5174642, at *8-9, make crystal clear that the sufficiency of an arbitration agreement's terms must be evaluated at the time the arbitration agreement was signed, not via retroactive gap-filling. See also Booker, 413 F.3d at 85 (observing that the enforceability of an arbitration agreement depends on the parties' intent at the time of the contract formation); Nesbitt v. FCNH, Inc., 811 F.3d 371, 380-81 (10th Cir. 2016) (same). Flanzman merely explained that an arbitration agreement's failure to select an arbitral forum such as AAA or "a general process for selecting an arbitration mechanism or setting" is not alone sufficient to render the agreement

US Pack then proceeds to discuss <u>Tharpe</u>, 2021 WL 717362, as an example where the court enforced an arbitration agreement where the agreement did not expressly wiave the right to a jury trial and lacked mutual assent. But in <u>Tharpe</u>, the agreement actually made clear that "employment disputes will be resolved 'by Arbitration instead of in a court of law'" and "clearly states that it requires arbitration in lieu of bringing claims in court." <u>Id.</u> at *4 Furthermore, the acknowledgment form signed in that case "references and incorporates the Agreement that explains dispute resolution and makes clear that it means arbitration." <u>Id.</u> As Magistrate Donio correctly observed, the arbitration agreement in this case is as clear as mud on such points. (Opinion at 21-25) As explained above, the primary holding of <u>Tharpe</u> makes clear that arbitration agreements that the fees and costs of arbitration, like here, are unenforceable. <u>See id.</u> at *6.[11]

---

unenforceable. <u>See</u> <u>Flanzman</u>, 244 N.J. at 137-40. The case merely served to distinguish itself from <u>Kleine v. Emeritus at Emerson</u>, 445 N.J. Super. 545 (App. Div. 2016), where the arbitral forum the arbitration agreement selected could no longer be used. <u>See</u> <u>Flanzman</u>, 244 N.J. at 140. <u>Flanzman</u> does not stand for the proposition that US Pack would have this Court believe – that the NJAA is a silver bullet that empowers the Court to rewrite an arbitration agreement whose essence is permeated by unconscionability.

[11]     US Pack also cites a series of recent cases that are inapposite. First, US Pack cites <u>Lawrence v. Sky Zone, LLC</u>, 2021 WL 1186406, at *5-6 (N.J. Super. App. Div. March 30, 2021). Of course US Pack ignores the fact that <u>Lawrence</u> engaged in an analysis of whether the <u>Atalese</u> requirements were met. <u>See id.</u> The only issue the parties debated in that case was whether the unavailability of the chosen forum, JAMS, was fatal to the arbitration agreement, concluding it was not because the court could utilize the severability clause to narrowly strike that forum requirement. <u>See id.</u> at *5-6. The arbitration agreement satisfied <u>Atalese</u>, and is thus not relevant to this case. <u>See id.</u> at *6. US Pack also cites to <u>Richardson v. Sky Zone, LLC</u>, 2021 WL 1308358, at *4-6 (N.J. Super. App. Div. April 8, 2021), which presented the same issues as in <u>Lawrence</u> and is thus equally inapplicable.

Remarkably, although US Pack cites a litany of cases, not a single one actually supports its argument. The protections set forth in <u>Atalese</u> remain good law, bolstered by <u>Arafa</u>, and to the extent US Pack others otherwise, it does so through misinterpreting and distorting the holdings of the cases it cites.

### C.   Plaintiff's Other Arguments Also Require a Finding that the Arbitration Agreement is Unenforceable

As explained above, Magistrate Judge Donio was to correct to find that the language contained in the arbitration agreement was insufficient to inform Plaintiff of the implications of arbitration and to encompass Plaintiff's statutory claims. However, Plaintiff's other arguments are even more persuasive, and should the Court disagree with Magistrate Judge Donio's analysis, it should proceed to deny US Pack's Motion to Compel based on these arguments.

#### 1.   US Pack, as a non-signatory to the agreement, cannot enforce it

US Pack also cannot enforce the arbitration agreement because it is a non-

---

US Pack's citation to <u>Siperavage v. Uber Technologies, Inc.</u>, 2021 WL 2680060, at *5 (D.N.J. June 30, 2021), is similarly unavailing. There, the court simply concluded that a class action waiver in the the arbitration agreement was not *per se* unconscionable. However, as explained herein, the class arbitration waiver in this case is exactly like the one that the court in <u>Muhammad v. County Bank of Rehoboth Beach, DE</u>, 189 N.J. 1, 15-16 (2006).

Similarly, US Pack's citation to <u>Cervalin v. Universal Glob.</u>, 2021 WL 2793593, at *3-6 (N.J. Super. App. Div. July 6, 2021) lacks merit. The <u>Cervalin</u> court engaged in an <u>Atalese</u> analysis and concluded that the arbitration agreement passed muster because it specifically stated that all disputes would be decided in arbitration in court, and not by a jury trial. <u>See id.</u> at *4. <u>Cervalin</u> is thus easily distinguishable from the present case and does not support US Pack's argument.

signatory to the agreement.[12] The cases in this state and Circuit are clear that US

Pack, as a non-signatory, cannot enforce the arbitration agreement between

Plaintiff and SCI, and that the very narrow exceptions to this non-signatory rule are

not even remotely satisfied. In New Jersey, non-signatories of a contract may only

compel arbitration where they are a third party beneficiary of the contract, or

where they can assert equitable estoppel.[13] As the Third Circuit has explained, "the

presumption in favor of arbitration does not extend . . . to non-signatories to an

agreement; it only applies when both parties have consented to and are bound by

the arbitration clause" White v. Sunoco, Inc., 189 F. Supp. 3d 486, 491 (E.D. Pa.

2016). Rather, in such circumstances "the party opposing arbitration is given the

benefit of all reasonable doubts and inferences that may arise." Griswold v.

Coventry First LLC, 762 F.3d 264, 270-71 (3d Cir. 2014).

**First**, US Pack is not a third party beneficiary of the agreement, as there is

no evidence that the parties intended to benefit US Pack. The leading case in this

Circuit on this issue is E.I. DuPont De Nemours and Company v. Rhone Poulenc

Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 196-97 (3rd Cir. 2001). In

---

[12]   Magistrate Judge Donio rejected Plaintiff's argument based on the strict
standard for reconsideration. (Opinion at 7-11) However, nearly all of the cases
that Plaintiff has relied on advancing this argument were issued after the Court's
original decision finding that US Pack could enforce the arbitration agreement as a
third-party beneficiary. (Magistrate Judge Donio's 2016 Opinion at 10-13, ECF
No. 42.)  And this Court need not apply a reconsideration standard, as it reviews
the Magistrate's decision *de novo*. See V.I. Water & Power Auth. v. GE Int'l, 561
F. App'x 131, 134 (3d Cir. 2014).
[13]   Hojnowski ex rel. Hojnowski v. Vans Skate Park, 868 A.2d 1087 (N.J.
Super. App. Div. 2005); Hirsch v. Amper Fin. Servs., LLC, 71 A.3d 849 (N.J.
2013).

that case, recognizing that arbitration is a creature of contract, the Third Circuit affirmed the lower court holding that DuPont, a non-signatory to the arbitration agreement, could not be forced into arbitration because there was no clear intention of the parties that DuPont was an intended beneficiary of the contract. See id. at 196-97. Applying Delaware law, which as set forth below is the same as New Jersey, the court stated:

> To qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.

Id. at 196 (internal citation omitted). To support its conclusion in DuPont, the Third Circuit noted that throughout the contract there were only references to the "parties" to the agreement, and DuPont was not one of those "parties." DuPont, 269 F.3d at 196-97.  Here, in this case the same language exists throughout the contract, referencing only "the parties hereto", or "each party." (2013 Owner/Operator Agreement, ECF No. 17-2 at 7-11.) Finally, in DuPont the claim which DuPont was seeking to litigate did not clearly arise out of the contract which contained the arbitration clause, nor was it related to the claims being litigated in arbitration. See DuPont, 269 F.3d at 197.[14]

---

[14]     Likewise, in this case Plaintiff is in no way making any claim under his contract with SCI, nor has he even sued or brought a claim against SCI. In fact his whole claim is that he is an employee not an independent contractor, and the contract is therefore clearly a sham. (Compl. ¶ 15, ECF No. 1.) As one district court has recently commented, when a plaintiff claims independent contractor misclassification, the plaintiff is not bringing a claim under the contract and instead is challenging the contract was ever valid. See Green, 504 F. Supp. 3d at 73.

Here, to determine whether the arbitration agreement was intended to benefit US Pack, it is appropriate to analyze the relationship (if any) between US Pack and SCI. The companies have no financial, governance, or any other ties. SCI calls itself a third party administrator. (Owner/Operator Agreement, ECF No. 17-2 at 7.) The drivers, like Plaintiff, have to sign up with SCI, in order to become a driver for US Pack. (Fidiopastis Decl. ¶ 5, ECF No. 17-2 at 2.) The driver pays a fee to SCI to process payroll, and purchases various types of insurance from SCI, which are necessary to be a driver. (Owner/Operator Agreement, ECF No. 17-2 at 7.) There is no evidence that Plaintiff met with or had dealings with SCI except as to sign this contract, and receive payroll through them, along with required insurances. The relationship between Plaintiff and SCI is not unlike the relationship between a payroll company like ADP and a worker at an ADP client workplace.[15]

Importantly, US Pack is nowhere mentioned in the agreement, and there is a specific provision in the arbitration agreement barring Plaintiff from joining any entity or claims other than against SCI. (2013 Arbitration Agreement, ECF No. 17-2 at 11.) Again, Plaintiff makes no claims against SCI whatsoever. He simply

---

[15]     Moreover, as explained previously, the arbitration agreement specifically covers just the parties that signed the agreement. Indeed, SCI later specifically amended this language in a later version of the agreement that is not binding on the Plaintiff in this case since he no longer worked for US Pack at that point, to include disputes between its delivery drivers and its clients such as US Pack in the 2015 iteration of the arbitration provision: "In the event of any dispute, claim, question, or disagreement arising or relating to this agreement or the breach thereof, **or service arrangement between Owner/Operator and SCI's clients**, the parties hereto shall…." (2015 Agreement 26th Para., Exh. A to First Fido. Decl., ECF No. 8-2) (emphasis added).

claims that under the NJWPL and the NJWHL, he was an employee of US Pack, and as a result of being an employee he was entitled to certain wages and the restitution of certain deductions. (Compl., ECF No. 1.) There is not one scintilla of evidence that Plaintiff had any intent to benefit US Pack when he signed the agreement, and indeed the agreement is so poorly worded that Plaintiff would not have had any way of knowing that he was signing a contract intended to benefit US Pack. There is no evidence that Plaintiff even ever talked to SCI or had any dealings with them.[16]

The federal district and state courts of New Jersey continue to adhere to the principles laid out in DuPont with respect to the enforcement of an arbitration agreement under a third party beneficiary theory, under which US Pack cannot prevail. For example, in Kanoff v. Better Life Renting Corp et. al., 2008 WL 442145, at *4-5 (D.N.J. Feb. 14, 2008), the plaintiff challenged her employment

---

[16]      In the cases where a third party beneficiary relationship is found, the non-signatory holds a close and clearly discernible relationship to the signatory, such as a defendant company being the signatory, and the president of the company being the non-signatory, and the agreement specifically stating that any claim arising out of employment must be arbitrated. See, e.g., Nardone v. 3G BioTech, LLC, 2011 WL 6339729, at *4 (D.N.J. Dec. 19, 2011). Where the signatory is a known subsidiary of its parent company, the parent company may claim such status as a third party beneficiary. See, e.g., Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1295 (3d Cir. 1996) (internal citation omitted). Plaintiff is aware of no cases where a court will infer a such relationship to a non-signatory, independent of a signatory, and where no language establishes such a relationship. Mut. Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853, 866-67 (D.N.J. 1992) (collecting cases) ("New Jersey courts have been hesitant to imply a third party beneficiary obligation unless the parties explicitly indicate that (1) claimant is an intended beneficiary of the proposed arrangement and (2) that the claimant will have a direct claim under the contract.") (internal quotation omitted) (collecting cases).

termination and asserted that since she had not signed an arbitration agreement with defendant Better Life, the arbitration agreement she signed with its affiliate, defendant SPD, was not enforceable. The court found however, that Better Life was a third party beneficiary of the contract because: (1) SPD and Better Life were both simply subsidiaries of the same parent corporation that owned the disputed property where plaintiff worked; (2) The arbitration agreement specifically covered termination of employment, which is what plaintiff was challenging; and (3) The agreement specifically stated that the arbitration clause included all claims against the "company" and the "company" was specifically defined as plaintiff's employer, and all other "affiliates, parents, subsidiaries and owners." Id. at *4-6.[17]

All of these components are lacking in the present case. There is no known affiliation or even relationship between US Pack and SCI, other than that SCI acts as a third party administrator for purposes of insurance and payroll for delivery companies. Moreover, the arbitration agreement does not cover employment-related claims, or misclassification. (2013 Arbitration Agreement, ECF No. 17-2 at 10-11.) The agreement **does not** in any way reference or encompass claims against an unnamed third party US Pack, and in fact expressly states just the opposite – that claims cannot be brought against other parties. (2013 Arbitration Agreement,

---

[17]    Accordingly Judge Wolfson held, relying on DuPont, that the defendants had shown the required "intent" to benefit the non-signatory affiliate Better Life because she was challenging her termination and the agreement specifically provided for arbitration in the event she was terminated, she knew that the non-signatory and signatory were interrelated companies with the same owner and officials, and her arbitration agreement specifically and expressly covered claims of the signatory company's affiliates. See id. at *5.

ECF No. 17-2 at 10-11.)  There is no extrinsic evidence that Plaintiff here knew of

or had any intention of benefiting US Pack with his agreement, nor any way of

knowing that by signing the agreement, he was intending to undertake an

obligation to arbitrate claims with a company that was neither mentioned in the

agreement, nor affiliated with same.[18] Simply put, because the arbitration

agreement does not reference US Pack specifically and in fact even precludes

---

[18]     Similarly, in Richardson v. Coverall North America, Inc., 2018 WL
4639225, at *7 (D.N.J. Sept. 27, 2018), reversed on other grounds in Richardson v.
Coverall North America, Inc., 811 Fed. App'x. 100 (3d Cir. 2018), the defendant,
Coverall of North America ("CNA"), argued that it was "a 'third party beneficiary'
of the agreement and can therefore compel arbitration even as a non-signatory."
Following clearly delineated Third Circuit law, Judge Shipp held that the parties'
intent was the key factor to determine whether a third party was an intended third
party beneficiary of a contract or merely an "incidental beneficiary" Id. The court
thus concluded that the contract must "be made for the benefit of said third party
within the intent . . . of the contracting parties." Id. at *8 (citing Mut. Benefit Life
Ins. Co. v. Zimmerman, 783 F. Supp. 853, 866-67 (D.N.J. 1992)).  "Unless such a
conclusion can be derived from the contract or surrounding facts, a third party has
no right of action under the contract despite the fact that he may derive an
incidental benefit from its performance." Id. CNA had a stronger argument to be a
third party beneficiary than here. CNA was the master franchisor to Sujol, LLC,
which was the actual signatory to the arbitration agreement, and in their complaint,
the plaintiffs accused both entities of engaging in a scheme to deprive them of
wages. See id. at *1 CNA pointed out that there were numerous references to CNA
specifically in the contract with the plaintiff. See id. at *8. However, the court
found that the references to CNA in the agreement were "not the type of references
that would evidence intent to make CNA a third-party beneficiary." Id.  (internal
citation omitted). And like here, the court found persuasive that the "strict
contractual language limiting the ability of any third party to participate in
arbitration undermines defendant's argument that CNA be permitted to compel
arbitration." Id.  Although the Third Circuit reversed and remanded, it did so
finding a strong delegation clause, delegating such issues to the arbitrator, see
Richardson, 811 Fed. App'x at 103-04, but in the present case, there is no
delegation clause. (2013 Arbitration Agreement, ECF No. 17-2 at 10-11.)

Plaintiff from bringing claims in arbitration against any entity other than US Pack, there is no way to find that US Pack has the clear and close relationship with SCI to enforce the arbitration agreement as a third party beneficiary.

**Second**, US Pack cannot compel arbitration as a non-signatory under the doctrine of equitable estoppel. There is no close relationship or intermingling between SCI and US Pack that would justify equitable estoppel, and Plaintiff **did not** allege that SCI was a joint employer or had any involvement in US Pack's operation other than as a peripheral third party payroll administrator.[19]

### 2. The Arbitration Agreement is Rife with Unconscionable Provisions Rendering it Unenforceable

The arbitration agreement is so laden with unconscionable terms, that under New Jersey law, it is unenforceable. Indeed, the United States District Court for

---

[19]     The Third Circuit has confirmed the *limited* nature of equitable estoppel in White v. Sunoco, in the context of Florida and South Dakota law, which is arguably broader than New Jersey law. See White v. Sunoco, 870 F.3d 257, 264-66 (3d Cir. 2017) (finding no equitable estoppel where the plaintiff had not named the signor to the arbitration agreement as a defendant and where plaintiff's claims against defendant did not rely on the terms of the agreement). The Third Circuit explained that a non-signatory to an agreement did not have the right to enforce the agreement absent a clear indication that the plaintiff would have understood that he was granting arbitration rights to the third party. See id. In order to invoke estoppel, there has to be a close relationship between the entity that is a party to the arbitration agreement and the party seeking to enforce the agreement. See Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008). As one court explained, "in order for estoppel to apply, there 'must be a relationship among the parties which either supports the conclusion that [the signatory] had consented to extend its agreement to the non-signatory], or otherwise put, made it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]." In re A2P SMS Antitrust Litig., 972 F. Supp. 2d 465, 479 (S.D.N.Y. 2013) (quoting Sokol Holdings, 542 F.3d at 361).

the District of Arizona, addressing the exact same SCI arbitration agreement held

that it was so permeated with unconscionability that it would not be appropriate to

sever specific provisions, but should simply not be enforced. See Ziglar v. Express

Messenger Systems, Inc., 2017 WL 6539020, at *2-4 (D. Ariz. Aug. 31, 2017).[20]

The Ziglar court found that the agreement was unconscionable under Arizona law

because (1) it prohibited the awarding of attorney's fees to the prevailing plaintiffs

as provided for by state and federal law; (2) the agreement required the plaintiff to

split the cost of the arbitrators' fees, and that prohibitive cost prevented the

effective vindication of plaintiff's rights; and (3) the agreement did not provide for

liquidated damages or treble damages that were otherwise available under federal

and state law. See id. Likewise, the California Court of Appeal recently considered

SCI's arbitration agreement in Subcontracting Concepts (CT), LLC v. De Melo, 34

Cal. App. 5th 201, 215 (2019), and concluded that it was "so permeated with

unconscionability that severance of the unconscionable terms was not possible."[21]

---

[20]     Although the Ninth Circuit vacated the Ziglar decision for further
consideration after the Supreme Court decided Epic Systems Corp. v. Lewis, 138
S. Ct. 1612 (2018), see Ziglar v. Express Messenger Systems, Inc., 739 Fed.
App'x. 444, 445 (9th Cir. 2018), the district court then concluded that Epic
Systems…does not impact the Court's prior conclusion, that "[t]he extent of
unconscionability here would force the Court to rewrite, rather than interpret, the
parties' Arbitration Provision." Ziglar v. Express Messenger Systems, Inc., 2019
WL 1522994, at *2 (D. Ariz. March 4, 2019).

[21]     SCI's agreement was procedurally unconscionable, because it was an
adhesion contract, which was a condition of employment, and it did not state
clearly what rules would govern arbitration. See id. at 211.The agreement was
substantively unconscionable for the same reasons as in Ziglar and it barred the
plaintiff from pursuing claims on behalf of others under California's Private
Attorneys General Act and precluded an administrative remedy. See id. at 214-15.

The arbitration agreement here is unconscionable under New Jersey law, which is arguably less favorable to US Pack's argument than the law addressed in Ziglar and De Melo. Under New Jersey law, where an arbitration agreement is found to be procedurally *or* substantively unconscionable, "the court may refuse to enforce the entire agreement." See Pyo v. Wicked Fashions, Inc., 2010 WL 1380982, at *4 (D.N.J. March 31, 2010). This agreement is rife with procedural and substantive unconscionability, and these provisions cannot be severed, as the agreement as a whole is "pervasively infected with illegality." Booker, 413 F.3d at 84 (internal citations omitted). As (now) Chief Justice Roberts) explained in Booker, "[i]f illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts . . . the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties." Id. at 84-85 (internal citations omitted).

First, the arbitration agreement forces each party to be responsible for their own costs of arbitration, which means at the very least that Plaintiff would have to pay for at least **one and a half arbitrators** (the agreement calls for a three arbitrator panel), whose costs could be thousands of dollars per day.[22] Indeed, in a

---

[22]   See Spinetti v. Service Corp. Intern., 324 F.3d 212, 217 (3rd Cir. 2003) (acknowledging that the arbitrator fees for the arbitration at issue would likely amount to thousands of dollars per day in addition to similarly sizeable fees to be paid up front); see also Nesbitt, 811 F.3d at 375 (acknowledging that even with just a single arbitrator, the costs for plaintiff would amount to thousands of dollars); Mohamed v. Uber Technologies, Inc., 109 F. Supp. 3d 1185, 1208 (N.D. Cal. 2015) (acknowledging that arbitrator's fees in an employment misclassification arbitration similar to this one would reach into the tens of thousands of dollars, including initial fees to be paid upfront);  Ferguson v. Countrywide Credit Indus.,

recent arbitration in which Plaintiff's counsel represented an individual alleging

employment discrimination all the way through summary judgment and a hearing

before a single arbitrator, the arbitration fees and costs amounted to more than

$158,000. (Arbitration Invoices, filed previously at ECF No. 243-3.)[23] Plaintiff

could not possibly afford to pay those fees, as he and his family are on the verge of

poverty. He has submitted a declaration explaining that he only makes $12.00 per

hour in his current job, approximately $840 week before taxes (and more like $800

per week after the cost of car insurance, which he must pay himself). (Easterday

Decl. ¶¶ 9-10, filed at ECF No. 243-05.)[24]

      Under New Jersey law, even if an arbitration agreement leaves room for the

---

Inc., 298 F.3d 778, 785 (9th Cir. 2002) (noting that arbitrator fees typically run into
*thousands* of dollars each day, as arbitrators often charge $300-$400 per hour).

[23] Similarly, in two recent arbitrations in which Plaintiff's counsel represented
drivers bringing misclassification claims in arbitrations before single arbitrators,
the arbitration service billed preliminary deposits of $34,800 in one case and
$48,100 in the other to cover the anticipated compensation and expenses of the
arbitrators. (Arbitration Invoices, filed at ECF No. 243-04.) Moreover, these
amounts did not include an additional deposit that would be billed if dispositive
motions were filed. (Arbitration Invoices, ECF No. 243-04.)

[24] Likewise, Plaintiff's wife works in a school cafeteria making only about
$1,200 per month before taxes. (Easterday Decl. ¶ 11, ECF No. 243-05.) Plaintiff
and his wife have two elementary school children who live with him and whom he
supports, making it difficult to even cover his routine bills. (Easterday Decl. ¶¶ 9-
12, ECF No. 243-05.) Indeed, Plaintiff testified that he currently has no savings
whatsoever. (Easterday Decl. ¶ 4, ECF No. 243-05.) Plaintiff has monthly
expenses, including the cost of rent, food, utilities, vehicle expenses, house
supplies, and others, that amount to at least $3,400. (Easterday Decl. ¶ 12, ECF No.
243-05.) After his monthly expenses, Plaintiff and his wife barely have any money
at all for discretionary spending. (Easterday Decl. ¶ 12, ECF No. 243-05.)
Moreover, Plaintiff's income has been at that modest level or even less for the
entire pendency of this case. (Easterday Decl. ¶¶ 6-9, 14-15, ECF No. 243-05.)

*potential* that the arbitration costs will be exorbitantly high for the claimant, and a chilling effect could result, the arbitration provision will be found unconscionable. See Delta Funding Corp., 289 N.J. at 42-44 (noting that the risk that plaintiff would have to pay exorbitant costs in an arbitration rendered the arbitration agreement unconscionable in that it is a deterrent to the vindication of her statutory rights.").[25] Because Plaintiff could not possibly cover the fees for one and a half arbitrators, the 2013 Agreement has exactly the kind of chilling effect that renders an arbitration agreement unconscionable.[26]

US Pack has conceded that this provision is unconscionable but argues that the cost-splitting provision is severable. Importantly, both Delta Funding Corp., 189 at 42-44, and Nesbitt, 811 F.3d at 380-81, make clear that in evaluating whether a cost-splitting arrangement in an arbitration agreement prevents the effective vindication of a statutory right, one has to look at the agreement as it stood at the time the individual would be making the decision whether to pursue the case in arbitration. As the Tenth Circuit explained:

> In doing so we stated that it was unlikely that an employee in the plaintiff's position faced with the mere possibility of being reimbursed for arbitrator fees in the future would risk advancing those fees in order to access the arbitral forum. Likewise, the Sixth Circuit has rejected a similar argument noting that in many cases if not most, employees considering the

---

[25]    See also Nesbitt, at 80-81 (10th Cir. 2016) (finding that even where the FAA applied, where an arbitration agreement imposed fees that would chill the ability of an individual to vindicate a statutory right, the agreement was unenforceable).

[26]    See Lim v. TForce Logistics, LLC, --- F.4th ---, 2021 WL 3557294, at *7 (9th Cir. Aug. 12, 2021) (finding in a wage and hour case brought by a delivery driver that a cost-splitting provision in an arbitration agreement was unconscionable, because it would make pursuing the claim "prohibitively costly" and prevent the plaintiff from vindicating his rights).

> consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst case scenario would mean not only losing on their substantive claims but also the imposition of costs of the arbitration.

Nesbitt, 811 F.3d at 380-81. Therefore, US Pack's objection that the court could simply sever these provisions does not suffice to remedy the effective vindication problem. Courts in this District take the same approach. For example, in Adamson, 2009 WL 5174642, at *8-9, Judge Simandle held that even where a defendant had offered to pay all costs of arbitration despite the arbitration agreement's providing that the cost would be split between the parties, "the Court may not consider an offer to pay costs in making this determination" whether the provision is unconscionable, because "a court must determine unconscionability as of the time a contract was formed…."[27] As such, "[t]he Court cannot consider a Defendants' after-the-fact offer to pay costs in determining whether an arbitration agreement is unconscionable." Id. at *9. Here, US Pack has not even offered to pay the costs of arbitration – it has simply argued that this provision is severable. This severability argument cannot save the arbitration from its unconscionable requirement that Plaintiff must pay the fees and costs for one-and-a-half arbitrators.

Second, the agreement is unconscionable because it prohibits Plaintiff from recovering his attorneys' fees should he prevail on his NJWHL claim on the

---

[27] While Judge Simandle ultimately found that the provision in question was not unconscionable, he so found because the plaintiff had submitted false documentation of his expenses and because the AAA Consumer Arbitration Rules applied, which limited the amount the plaintiff would likely have to pay in arbitration costs to $375 plus the costs of two interpreters. See Adamson, 2009 WL 5174642, at *12. The arbitration agreement in this case includes no such limitation. (2013 Arbitration Agreement, ECF No. 17-2 at 10-11.)

merits, even though the NJWHL so provides, see N.J. Stat. § 34:11-56a25.

Furthermore, the NJWPL also now provides for the recovery of Plaintiff's

attorneys' fees as the result of an amendment enacted on August 6, 2019. See New

Jersey Wage Theft Act, S. 1790/A. 2903 (2019). Moreover, a New Jersey court has

already ruled that the Wage Protect Act's amendment to the remedies available

under the NJWPL are to be given retroactive effect. See Castro v. Linden Bulk

Transportation LLC, a/k/a Odysset LBT LLC, Civ. Act. No. ESX L 006141-19,

Order at *10-11 (N.J. Super. Ct. Jan. 4, 2021) (filed at ECF No. 243-6). As the

New Jersey Supreme Court has found, "by agreeing to arbitrate a statutory claim, a

party does not forgo the substantive rights afforded by the statute; it only submits

to their resolution in an arbitral rather than a judicial, forum." Delta Funding Corp.,

189 N.J. at 44 (internal citation omitted). Limiting Plaintiff's right to recover his

attorneys' fees is an impermissible limitation on the substantive rights provided by

the NJWHL.[28]

Third, the arbitration agreement precludes Plaintiff from recovering

equitable or punitive relief (meaning that he can only recover actual money

damages), and places severe limitations on discovery including limiting deposition

to three per party with a maximum of two hours each. (2013 Agreement, ECF No.

---

[28]    See id. at 41 (holding that an arbitration agreement that limits the plaintiff's
statutory remedies, including the ability to recover attorney's fees provided for by
statute, renders the agreement unconscionable). US Pack may argue that this
provision could simply be severed, but as explained with respect to the costs of
arbitration, the question is whether the agreement was unconscionable at the time it
was signed. See Delta Funding Corp., 189 at 42-44; Nesbitt, 811 F.3d at 380-81;
Adamson, 2009 WL 5174642, at *8-9.

17-2 at 10-11.) Especially egregious is the fact that though Plaintiff has brought a misclassification case, he cannot seek the equitable relief of reclassification of US Pack's delivery drivers as employees if he pursues his claim in arbitration. These substantive limitations of Plaintiff's claim render the agreement unconscionable.[29]

Fourth, the arbitration agreement was a contract of adhesion, and Plaintiff had little bargaining power. See Delta Funding Corp., 189 NJ at 39-40 ("[C]ontracts of adhesion necessarily involve indicia of procedural unconscionability.").[30] In assessing contracts of adhesion, New Jersey courts look to "the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering party, and (4) the public interests affected by the contract." Id. at 40 (quotations omitted). Here, the agreement was a contract of adhesion with high unconscionability. As the general counsel of SCI explained, all drivers who wished to work for US Pack

---

[29]     See Delta Funding Corp., 189 N.J. at 41-44; Lucey v. FedEx Ground Package Systems, Inc., 2007 WL 3052997, at *6-7 (D.N.J. Oct. 18, 2007) (holding that an arbitration agreement was unconscionable law where it limited the damages that were available, restricted the discovery the parties could engage in, and limited attorney's fees); see also Alexander v. Anthony Intern., L.P., 341 F.3d 256, 267-68 (3d Cir. 2003) (where arbitration significantly limited the relief available to plaintiffs and prohibited the award of attorney's fees in the face of a statute that provided for such fees, the agreement was unconscionable).

[30]     Once again, US Pack raises the incoherent argument that Plaintiff's willingness to sign the agreement and his decision not to cancel the agreement somehow indicate that the agreement was not procedurally unconscionable, despite the fact that he would have been out of the job if he had canceled it or refused to sign. Obviously, US Pack cites no authority to support this contention, as those factors have no bearing on the existence of substantive unconscionability.

had to sign the SCI agreement in order to do so. (Fidiopastis Decl. ¶ 5, ECF No. 17-2 at 2.)[31] US Pack has failed to offer any evidence that Plaintiff could negotiate. Moreover, the contract directly implicates New Jersey public policy, which favors allowing workers to bring statutory claims in court.[32]

### 3. The Arbitration Agreement Includes an Unenforceable Class Action Waiver

Finally, the agreement is unenforceable because it contains the kind of class arbitration waiver that the Supreme Court of New Jersey has said is impermissible in <u>Muhammad</u>, 189 N.J. at 22. There, the court agreed that where the amount that the plaintiff could win was relatively small, a class action waiver would be

---

[31]     <u>See also</u> <u>Hubbard v. Comcast Corp.</u>, 2020 WL 4188127, at *7 (D.N.J. July 21, 2020) ("Because Plaintiff was forced to accept the terms of Comcast Solutions or quit his job, the Court is willing to assume that he has made a strong showing of procedural unconscionability."); <u>see also</u> <u>Lim</u>, 2021 WL 3557294, at *5 (procedural c "there were no negotiations as to any of the contract terms").

[32]     In arguing that this agreement was not a contract of adhesion to Magistrate Judge Donio, US Pack cited to <u>Martindale,</u> 173 N.J. at 89-90. However, that court is easily distinguishable given the fact that the plaintiff in that case was "an educated person who was experienced in the field of human resources," <u>see</u> <u>id.</u> at 91, meaning that she was in a far better position to bargain than the Plaintiff here, who is a low wage courier. US Pack's citation to <u>Soranno v. Heartland Payment Systems, LLC</u>, 2020 WL 5652469, at *14 (D.N.J. Sept. 23, 2020) is similarly unavailing, as the plaintiff there was a finance manager "who had five years of experience" and thus in a superior position for bargaining purposes than Plaintiff here. Likewise in <u>Montgomery v. Bristol-Myers Squibb Co.</u>, 2020 WL 3169373, at *1 (D.N.J. June 15, 2020), the plaintiff was a highly educated registered nurse, again more sophisticated than Plaintiff, and the court based its decision in part on her level of education. Similarly, in <u>Young v. Prudential Ins. Co. of America, Inc.</u>, 297 N.J. Super. 605, 620 (D.N.J. 1997), the plaintiff was an insurance agent. In <u>Uddin v. Sears Roebuck & Co.</u>, 2014 WL 1310292, at *7 (D.N.J. March 31, 2014), the agreement was not a contract of adhesion because the plaintiff had the option to opt out of it without adverse consequences, unlike here.

unenforceable because it would prevent important statutory rights from being vindicated. Id. As numerous courts have found, the ability to bring class actions is essential in the context of wage claims, because the relatively small value of individual claims make it unlikely that many workers will be able to find lawyers willing to pursue their claims, and the risk of retaliation is significant.[33]

Although Arafa held that the class action waivers at issue did not render the arbitration agreements unenforceable, the basis for the court's holding was distinguishable from this case. Arafa, 243 N.J. at 172. The Arafa court merely stated that "[w]e also agree with the Appellate Division that Muhammad does not apply here," and "[b]y the same principles of construction applied to the jury trial waiver provision, we find that plaintiffs knowingly and voluntarily waived their ability to proceed as a class." Id. The lower court decision the court referred to was that in Colon, 459 N.J. Super. at 363, which explained that Muhammad was distinguishable because it concerned a class arbitration waiver rather than a class action waiver. In Colon, the "class-action waiver was not linked to the arbitration requirement." Here, the agreement contains only a class arbitration waiver, like that at issue in Muhammad, stating Plaintiff may not "arbitrate any claim as a representative member of a class or in a private attorney general capacity." (2013 Arbitration Agreement, ECF No. 17-2 at 11.) A significant consideration for the

---

[33]     See generally Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010). Fear of employer retaliation is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." O'Brien v. Encotech Const. Servcs., Inc., 203 F.R.D. 346, 350 (N.D. Ill. 2001).

Colon court was that Muhammad's validity was questionable because it was preempted by the FAA. See Colon, 459 N.J. Super. at 364 n.3. In Colon, the trial court had not formally found that the FAA did not apply, see id. at 359, in contrast to this case, where there has been an express finding that the FAA does not apply. (ECF No. 227 at 11-13.) Muhammad is not preempted by the FAA in this case, given the fact that the FAA does not apply and thus Muhammad controls.[34]

## IV.    CONCLUSION

For the aforementioned reasons, the Court should deny US Pack's appeal.

---

[34]       US Pack also attempts to distinguish this case from Muhammad in that the contract here was not a consumer contract. US Pack contends that Plaintiff's agreement with SCI does not raise the same kinds of concerns as class arbitration waivers in consumer contracts – that consumers are effectively deprived of any meaningful remedy because, the trivial amount of damages will prevent attorneys from pursuing cases on individual bases. However, in Justice Albin's persuasive opinion concurring in part and dissenting in part, he explained that the reasoning behind Muhammad applies equally in the setting where "individual employees are pursuing small statutory wage claims, and the only realistic means of seeking relief is through the mechanism of a class action, either in an arbitral or judicial forum." Arafa, 243 N.J. at 174 (Albin, J., concurring in part and dissenting in part). Further, Justice Albin cited to Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 115-16 (2007), which explained that, "given 'the nominal value of each class member's [wage] claim,' where each litigant 'lack[ed] the financial resources of their corporate adversary,' the class action was an 'equalizing mechanism' that 'allow[ed] them to adequately seek redress.'" Arafa, 243 N.J. at 174 (Albin, J., concurring in part and dissenting in part). Even if Plaintiff here has somewhat higher damages than those in Muhammad, the imbalance between Plaintiff as a low-wage worker and a large corporation such as US Pack is real and significant, and the elimination of the ability to litigate as a class significantly undermines the vindication of his rights.

Dated: August 18, 2021                    Respectfully submitted,

                                          /s/ Krysten Connon
                                          Krysten Connon, NJ Bar No. 016732012
                                          Harold Lichten (*pro hac vice*)
                                          Sarah R. Schalman-Bergen (*pro hac vice*)
                                          Thomas Fowler (*pro hac vice*)
                                          Lichten & Liss-Riordan, P.C.
                                          729 Boylston Street, Suite 2000
                                          Boston, MA 02116
                                          Telephone: (617) 994-5800
                                          kconnon@llrlaw.com
                                          hlichten@llrlaw.com
                                          ssb@llrlaw.com
                                          tfowler@llrlaw.com

                                          Alexandra K. Piazza, NJ Bar No. 010922013
                                          BERGER MONTAGUE PC
                                          1818 Market Street, Suite 3600
                                          Philadelphia, PA 19103
                                          Telephone: (215) 875-3000
                                          apiazza@bm.net

                                          Edward A. Wallace (*pro hac vice*)
                                          Wexler Wallace LLP
                                          55 W. Monroe St. Ste. 3300
                                          Chicago, IL 60603
                                          Telephone: (312) 346-2222
                                          eaw@wexlerwallace.com

                                          *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served by electronic filing upon counsel for Defendant USPack Logistics LLC.


Dated: August 18, 2021                    /s/ Krysten Connon
                                           Krysten Connon