IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL EASTERDAY, individually and on behalf of all persons similarly situated, | : : : : |
| Plaintiff, | : Civil No. 15-7559 (RBK/AMD) : |
| v. | : **OPINION** : |
| USPACK LOGISTICS LLC, | : : |
| Defendant. | : : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's appeal of Judge Donio's June 30, 2021 order denying Defendant's renewed motion to compel arbitration. (Doc. 252.) For the reasons stated herein, Judge Donio's order is **AFFIRMED**.

**I.   BACKGROUND & PROCEDURAL HISTORY**

Plaintiff Michael Easterday is a former employee of Defendant US Pack Logistics, LLC. (Doc. 1, "Compl.".) US Pack provides courier services throughout the Northeastern United States for companies selling pharmacy-related services to customers in the health care industry. (*Id.* ¶ 11.) Plaintiff worked as a courier for US Pack, delivering medicine and other pharmaceutical products on behalf of the company. (*Id.* ¶ 18.)

Plaintiff brought suit on behalf of a class of similarly situated individuals, namely other delivery drivers for US Pack. (*Id.* ¶ 28.) Plaintiff alleges that Defendant misclassified him and other drivers as independent contractors, thereby subjecting them to improper deductions from pay and denial of overtime pay. (*See, e.g., id.* ¶ 43.) Plaintiff brings causes of action for violation of

1

the New Jersey Wage Payment Law, the Overtime Wage and Hour Law, and unjust enrichment. (*Id.* ¶ ¶ 43, 51, 56.)

***The Employment Contract and Arbitration Provision***

Plaintiff signed an employment contract (the "Contract") which contains a binding arbitration agreement (the "Arbitration Provision"). (Doc. 8.) The Arbitration Provision reads in relevant part:

> TWENTY-SIXTH: ARBITRATION
> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement . . . If resolution . . . is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides.
>
> All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act. (Doc. 17-2.)

The Arbitration Provision then sets forth the process by which arbitration will take place and concludes by stating: "The arbitrator's decision shall be final and legally binding and judgment may be entered thereon." (*Id.*) The Arbitration Provision does not set forth what law will apply in the case that the Federal Arbitration Act ("FAA") is deemed inapplicable, nor does it specify what law will determine the applicability of the Provision. The Contract also contains language directly above the signature line reading: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES." (*Id.*)

***Defendant's Initial Motion to Compel Arbitration***

2

Defendant first moved to compel arbitration in November 2015. (Doc. 8.) In response, Plaintiff argued that the Court could not compel arbitration because Plaintiff, as a transportation worker engaged in interstate commerce, was subject to the FAA's "Section 1 Exemption." (Doc. 9.) The Section 1 Exemption states that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are not subject to arbitration under the FAA. 9 U.S.C. § 1. Defendant did not dispute Plaintiff's status as a transportation worker engaged in interstate commerce but rather argued that Plaintiff did not fall under the Section 1 Exemption because he was an independent contractor and not an "employee" within the meaning of that section. (Doc. 17.) Judge Donio could not determine whether Plaintiff was an independent contractor based on the limited factual record presented and therefore denied Defendant's motion to compel and ordered limited discovery. (Doc. 42.)

***The United States Supreme Court's Decision in*** New Prime, Inc. ***and Judge Donio's April 27, 2020 Order***

In February 2018, the Supreme Court granted certiorari in *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532 (2019), a case that would directly address the issue of whether a distinction existed between employees and independent contractors for purposes of the FAA's Section 1 Exemption. Accordingly, in December 2018, Judge Donio ordered that the proceedings in the current case be stayed pending the Supreme Court's decision in *New Prime*. (Doc. 155.) In January 2019, the Supreme Court held in *New Prime* that the Section 1 Exemption applies to both independent contractors and employees, finding that a distinction between the two categories of workers was immaterial. *New Prime,* 139 S. Ct. at 543–44.

On February 27, 2019, Judge Donio held a telephone conference in which both parties agreed that the Supreme Court's decision in *New Prime* resolved the issue of whether Plaintiff fell within the FAA's Section 1 Exemption. (*See* Doc. 169, at 5–6.) Judge Donio therefore held in an April 2020 order that Plaintiff was excluded from the FAA's coverage. (Doc. 194.)

After reaching this determination, Judge Donio moved to the question of whether Plaintiff could be compelled to arbitrate his claims under any other law. (*Id.*) Judge Donio held that because the Arbitration Provision was silent as to the application of any state law in the event that the FAA was deemed inapplicable, Defendant failed to demonstrate mutual assent to arbitrate under state law. (*Id.*)

### *The New Jersey Supreme Court's Decision in* **Arafa II** *& our December 4, 2020 Opinion*

At the time of Judge Donio's April 2020 order, there existed an inconsistency within New Jersey appellate courts on whether a court should apply the New Jersey Arbitration Act ("NJAA") in the event of the FAA's inapplicability. (*Id.*) This inconsistency was settled by the New Jersey Supreme Court in July 2020 in *Arafa v. Health Express Corporation*, 233 A.3d 495 (N.J. 2020), (hereinafter "*Arafa II*"). In *Arafa II*, the New Jersey Supreme Court held that NJAA applies automatically as a matter of law to all non-exempted arbitration agreements made on or after its January 1, 2003 effective date. *Id.* at 506. Further, NJAA will apply even if not explicitly mentioned in an arbitration agreement, as its application is "automatic." *Id.* at 507.

On May 23, 2020, Defendant appealed Judge Donio's April 2020 decision to the District Court. (Doc. 207.) On December 4, 2020, we vacated Judge Donio's decision and remanded for further proceedings. (Doc. 228.) We first found that Defendant had waived its argument that Plaintiff was not exempt under Section 1 of the FAA. (Doc. 227.) Further, following the Supreme Court's decision in *New Prime*, Judge Donio did not err in finding that the Arbitration Provision

4

was exempt from enforcement under the FAA. Because the New Jersey Supreme Court's holding in *Arafa II* resolved any conflict between New Jersey and New York law, Judge Donio was correct to apply the law of the forum state, New Jersey.

On whether Judge Donio had erred in finding that the Arbitration Provision was unenforceable under New Jersey law, we noted in light of *Arafa II* "it is now immaterial that the Agreement did not contain a provision stating that the NJAA would apply in the absence of enforceability under the FAA." (*Id.*) The Court can still find that the parties had a meeting of the minds regarding an agreement to arbitrate under the NJAA because the parties should have expected the NJAA to apply automatically. *Id.* So, NJAA applies automatically if the court otherwise determines that the standard to grant a motion to compel is satisfied. *Id.*

Because Judge Donio had based her decision on the mutual assent issue that was ultimately rendered moot by *Arafa II*, Judge Donio had not addressed several of Plaintiff's other arguments, leaving the Court unable to decide on the arbitration or Class Arbitration Waiver Provision issues. Plaintiff's arguments included claims that: (1) the Arbitration Provision does not encompass Plaintiff's statutory claims; (2) US Pack is a non-signatory to the Agreement; and (3) the Arbitration Provision's terms are unenforceable.

***Defendant's Renewed Motion to Compel Arbitration and Judge Donio's June 30, 2021 Order***

Following our December 2020 opinion, the parties submitted supplemental briefing on Defendant's renewed motion to compel arbitration under the NJAA. (*See, e.g.*, Doc. 229, Doc. 243.) Defendant reasoned that *Arafa II* is dispositive of the issue, arguing that the fact that the parties included an arbitration provision in the agreement sufficiently demonstrated their intent to resolve issues via arbitration. Defendant further argued that the Arbitration Provision is enforceable because it mirrored the clauses at issue in *Arafa II*, which were found to be enforceable

by the New Jersey Supreme Court. Defendant also argued that the Contract made clear to Plaintiff that there is a difference between arbitration and judicial proceedings and provided a limited waiver of Plaintiff's right to proceed in court, thereby rendering it enforceable under New Jersey law.

Plaintiff argued that Defendant, as a non-signatory, could not enforce the Contract. Plaintiff further argued that the scope of the Arbitration Provision was too narrow to encompass the claims at issue and that the Provision did not contain a clear waiver of the right to bring claims in court or the right to a jury trial.

In her June 30, 2021 Order, Judge Donio rejected Plaintiff's non-signatory argument, holding that the Court had previously resolved the issue of Defendant's ability to enforce the Arbitration Provision as a third-party beneficiary. (Doc. 248.) Judge Donio also rejected Defendant's contention that *Arafa II* was dispositive of the question before the Court. (*See id.* at 12.) According to Judge Donio, *Arafa II* stands for the proposition that the NJAA will automatically apply so long as the court can determine that the arbitration provision at issue is the product of mutual assent. (*Id.* at 13.) Under New Jersey law, an arbitration agreement must sufficiently explain to a plaintiff that he is waiving his right to pursue certain claims in court. (*Id.* at 14.) No particular language is needed to accomplish a clear waiver of rights, but the parties must be put on notice that there is a difference between settling a dispute in arbitration and settling a dispute in court. (*Id.*)

Judge Donio noted that in *Arafa II*, the New Jersey Supreme Court focused on whether the plaintiff's waiver was knowing and voluntary. (*Id.* at 16.) In *Martindale v. Sandvik*, 800 A.2d 872, 884 (N.J. 2002), the New Jersey Supreme Court upheld an arbitration provision whose language "provided plaintiff with sufficient notice at the time she signed the agreement that all claims

6

relating to employment with and termination . . . would be resolved through arbitration." (*Id.* at 16.) The court further found that the language of the provision specifically addressed waiver of the right to a jury trial, thereby "augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved . . . through arbitration." (*Id.* at 16. Quoting *Martindale*, 800 A.2d at 884.)

Judge Donio then turned to an instance in which the New Jersey Supreme Court found an arbitration provision in a consumer contract to be unenforceable because it failed to include "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." (*Id.* at 17. Quoting *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 315 (N.J. 2014).) Judge Donio rejected Defendant's argument that *Atalese* only applies in the context of consumer contracts, noting that the New Jersey Supreme Court has subsequently applied *Atalese* in the employment context, including in *Arafa II*. (*Id.* at 19–20. *See also Skuse v. Pfizer, Inc.*, 236 A.3d 939 (N.J. 2020).)

Judge Donio next applied these principles to the Arbitration Provision, finding that it did not clearly and unambiguously explain that Plaintiff was waiving his right to seek relief in court for breach of his statutory rights. (Doc. 248, Order at 21.) Judge Donio likened the Arbitration Provision to the provision in *Atalese,* noting that it similarly did not explain what arbitration is, nor did it indicate how arbitration differs from a judicial proceeding. (*Id.* at 22.) Judge Donio rejected Defendant's argument that the Arbitration Provision conveyed that there is a difference between arbitration and judicial proceedings, noting that the Arbitration Provision did not explain that arbitration is a replacement for judicial relief or that Plaintiff was giving up his right to pursue his claims in a court of law. (*Id.*) Judge Donio noted that the Arbitration Provision contained no language indicating that Plaintiff had waived his right to have a judge or jury decide his claims.

(*Id.*) Judge Donio also found that the Arbitration Provision's language regarding small claims court did not make "clear and understandable" to the average person those claims for which he had waived his right to a jury trial. (*Id.* at 22–23.) Judge Donio noted further that the language of the Arbitration Provision differed from the language of the provisions upheld in *Arafa II*, as those provisions explicitly referenced waiver of a jury trial. (*Id.* at 23.) Judge Donio concluded: "The Agreement at issue here simply does not contain wording sufficient for Plaintiff to have had a clear understanding that by agreeing to arbitration, he waived the right to bring certain claims in a court of law before a judge or jury." (*Id.* at 23–24.)

Judge Donio also rejected Defendant's argument that rather than focusing on the language of the Arbitration Provision, the Court should focus on evidence demonstrating Plaintiff's understanding of the agreement. (*Id.* at 24.) Judge Donio noted that the New Jersey Supreme Court rejected a similar argument, holding that the proper inquiry is into the language of the provision, and not the Plaintiff's level of sophistication. (*Id.* at 24–25. Citing *Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.,* 773 A.2d 665 (N.J. 2001).)

Finally, Judge Donio held that the Arbitration Provision does not encompass statutory claims arising out of Plaintiff's employment, noting that the Arbitration Provision is specifically limited to disputes and claims "arising from or relating to [the] agreement or the breach thereof[.]" (*Id.* at 25–29.) Judge Donio also addressed in a footnote Plaintiff's previous argument that the agreement is unenforceable because it is unconscionable, noting that the Court need not address this issue because it had found that Plaintiff did not make a knowing waiver. (*Id.* at 32 n. 16.)

***Defendant's Current Appeal and The Parties' Present Arguments***

On July 28, 2021, Defendant appealed Judge Donio's June 30, 2021 order denying its request to compel arbitration. (*See* Doc. 252.) Defendant argues that Judge Donio's June 2021

order is "expressly at odds" with our December 2020 opinion. (Doc. 252–1, at 2.) Defendant reiterates its prior argument that *Arafa II* is dispositive of the question before the Court. (*Id.*) Defendant further argues that the Arbitration Provision is enforceable under the NJAA because it mirrors the provisions found enforceable by the New Jersey Supreme Court in *Arafa II*. (*Id.* at 13.)

Defendant points to several decisions by the New Jersey Appellate Division and in the District of New Jersey which it claims demonstrate trending case law favoring enforcement of arbitration provisions since *Arafa II* was decided. (*Id.* at 15–18.) Defendant also takes issue with Judge Donio's finding that the Arbitration Provision does not encompass statutory claims arising out of Plaintiff's employment, noting that the parties have been litigating the enforcement of the Arbitration Provision for nearly six years without an issue as to the Provision's scope having been raised previously. (*Id.* at 21.)

In response to Defendant's appeal, Plaintiff argues that Judge Donio was correct to hold that *Arafa II* does not require a court to automatically compel arbitration, but rather requires an additional finding that the arbitration provision meets the relevant contractual standards in New Jersey outlined in *Atalese* and reiterated in *Arafa II*. (Doc. 253, at 10–11.) Plaintiff further argues that Defendant misrepresented the similarities between the Arbitration Provision in the present case and the provisions considered in *Arafa II* and that Judge Donio properly distinguished the language present in Plaintiff's agreement. (*Id.* at 13–17.).

## II.   LEGAL STANDARD

### A.  Appeal of Magistrate Judge Decision

United States Magistrate Judges are empowered to hear and decide on non-dispositive, pre-trial matters pending before the court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The district

court is required to consider timely objections to a magistrate judge's order and may modify or set aside any part of it. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

A district judge will set aside a magistrate judge's order on a non-dispositive matter if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual findings: a finding will be held to be clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A magistrate judge's legal conclusions are subject to de novo review under the "contrary to law" standard. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). A ruling is contrary to law when the magistrate judge "misinterpreted or misapplied the applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). The party appealing the order bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law. *Exxon Corp. v. Halcon Shipping Co. Ltd.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

### B. Motion to Compel Arbitration

#### i. Standard of Review

In the Third Circuit, where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," a motion to compel arbitration is decided under a Rule 12(b)(6) motion to dismiss standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). When, however, the nonmovant has provided sufficient evidence to place the question of whether they intended to be bound by the agreement in issue, or where the face of the complaint does not provide the "requisite clarity to

establish on its face that the parties agreed to arbitrate," the motion should be reviewed using a Rule 56 summary judgment standard. *Id.* Under this scenario, a "restricted inquiry into factual issues" is necessary to properly determine whether there was a "meeting of the minds" on the agreement to arbitrate. *Id.*

The party opposing arbitration, as the non-movant, is entitled to "the benefit of all reasonable doubts and inferences that may arise." *Bacon v. Avis Budget Group, Inc.*, 357 F. Supp. 3d 401, 414 (D.N.J. 2018) (citing *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)). If the non-moving party can demonstrate that there is a genuine dispute as to the enforceability of the arbitration clause, the motion to compel arbitration should be denied. *See Guidotti*, 716 F.3d at 776.

### ii. Mutual Assent & Waiver

In passing the FAA, Congress expressed "a strong federal policy in favor of resolving disputes through arbitration. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citations omitted). Similarly, New Jersey courts rely on this federal policy, as well as the "established State interest in favoring arbitration," when deciding whether to enforce an arbitration agreement. *See Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002). Before compelling a party to arbitrate, however, a court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* at 523 (citations omitted).

In resolving the first issue, the court must establish that the arbitration provision in question is valid, which requires a finding that the parties agreed to arbitrate. *See Bacon v. Avis Budget Group, Inc.*, 959 F.3d 590, 599 (3d Cir. 2020). To determine whether the parties agreed to arbitrate, the court should apply state-law principles of contract formation. *Id.* at 599–600.

An enforceable agreement under New Jersey law requires "mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). Where a contract contains a waiver of rights—including in an arbitration clause—the waiver "must be clearly and unmistakably established." *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 314 (N.J. 2014) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 670 (N.J. 2001)).

The New Jersey Supreme Court has held that "no magical language is needed to accomplish a waiver of rights in an arbitration agreement." *Morgan*, 137 A.3d at 1180. However, because an "average member of the public" may not know what arbitration is or how it works, the agreement must explain that arbitration is "a waiver of the right to bring suit in a judicial forum." *See Atalese*, 99 A.3d at 313–14. Further, the waiver language must be clear and unambiguous, and must inform the parties that there is "a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315.

An arbitration clause need not identify "the specific constitutional or statutory right guaranteeing access to the courts that is waived by agreeing to arbitration." *Id.* However, the arbitration clause must, "at least in some general and sufficiently broad way," explain that the plaintiff is giving up his right to bring his claims in court or to have a jury resolve the dispute. *Id.* at 316.

### III. DISCUSSION

Judge Donio's rulings on the applicability and impact of *Arafa II* and the validity of the arbitration clause under New Jersey law are legal conclusions, so the Court reviews each de novo. *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).

### A. *Arafa II*'s Mandate

Defendants contend that Judge Donio erred in holding that the New Jersey Supreme Court's decision in *Arafa II* did not require her to enforce the Arbitration Provision. (Doc. 252–1, 10.) *Arafa II* stands for the joint propositions that where an arbitration agreement made under the FAA is found to be exempt from the same, the NJAA "applies automatically as a matter of law to all non-exempted arbitration agreements from its January 1, 2003 effective date on," and that because of this automatic application, "no express mention of the NJAA is required to establish a meeting of the minds that it will apply." *Arafa v. Health Express Corporation*, 233 A.3d 495, 506–08 (N.J. 2020).

Accordingly, after the New Jersey Supreme Court's decision in *Arafa II*, the NJAA applies automatically to the Arbitration Provision in the case at hand, as it was made in 2013. (*See* Doc. 1, ¶ 13.) Further, the Arbitration Provision was governed by the FAA, but Plaintiff was later found to be exempt from that act's coverage. *Easterday v. USPack Logistics, LLC*, Civ. No. 15–07559, 2020 WL 7137859, *2 (2020) (slip copy). However, just as the issue of the NJAA's applicability alone did not end the New Jersey Supreme Court's inquiry in *Arafa II*, it also does not end the Court's inquiry here.

After holding that the NJAA applied automatically to the arbitration provision at issue even in the absence of express language, the New Jersey Supreme Court next considered whether the provision should be enforced. *Arafa II*, 233 A.3d at 508. Specifically, the Court looked to whether there was mutual assent and a clear and unambiguous waiver of rights. *Id.* at 508–09. In our prior opinion, we recognized that *Arafa II* requires automatic application of the NJAA, but not automatic enforcement of an arbitration provision. (Doc. No. 227.) In that decision, the Court noted that a court should "automatically apply the NJAA and grant a motion compelling arbitration if it

*otherwise determines* that the standard to grant a motion to compel is satisfied." (*Id.* (emphasis added)). *Arafa II* promotes the federal and statewide policy favoring arbitration by automatically applying the NJAA even when the parties have not expressly agreed to do so. It does not, however, abrogate a court's responsibility to ensure that an arbitration provision is valid and enforceable under traditional standards of contract formation.

**B. Mutual Assent and Waiver**

Defendants further contend that Judge Donio erred in holding the Arbitration Provision to be unenforceable because it failed to establish a clear waiver of Plaintiff's rights. Because Plaintiff has sufficiently demonstrated that there is a question as to whether the parties agreed to arbitrate, Defendant's motion will be reviewed using a summary judgment standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). Defendant's motion should therefore be denied if Plaintiff can establish that there is a genuine dispute as to the enforceability of the arbitration clause. *Id.* at 776.

The Arbitration Provision will be enforceable if the Court—applying New Jersey state-law principles of contract formation—determines that the parties agreed to arbitrate. *See Bacon v. Avis Budget Group, Inc.*, 959 F.3d 590, 599–600 (3d Cir. 2020). The Court must therefore find that there was mutual assent to arbitrate based on "a common understanding of the contract terms." *See Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). When a contract contains a waiver of rights, that waiver must be "clearly and unmistakably established." *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 314 (N.J. 2014) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 670 (N.J. 2001)). In reaching these conclusions, the Court will grant non-movant "the benefit of all reasonable doubts and inferences that may arise." *Bacon*

*v. Avis Budget Group, Inc.*, 357 F. Supp. 3d 401, 414 (D.N.J. 2018) (citing *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)).

The Arbitration Provision provides that disputes within the jurisdictional maximum for small claims will be settled in small claims court. (Doc. 17-2.) The Provision then states that all other disputes beyond the jurisdictional maximum for small claims court shall be settled by arbitration in accordance with the FAA. (*Id.*) The Provision states that the arbitrator's decision "shall be final and legally binding," and that "judgment may be entered thereon." (*Id.*) Finally, an acknowledgment above the signature block of the Contract notes that the Contract "CONTAINS A BINDING ARBITRATION PROVISION . . . WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES." (*Id.*)

Defendant argues that the Arbitration Provision should be enforced because it "mirrors" the provisions found to be enforceable in *Arafa II*. (Doc. 252–1, 13–15.) Defendant correctly notes that the two provisions at issue in *Arafa II* and the Arbitration Provision contain similar language, including agreements to: "arbitrate all disputes arising out of the agreements; be bound by the FAA; and waive their right to proceed on a class basis." (Doc. 252–1, 13.)

Unlike the Arbitration Provision, however, the provisions in *Arafa II* both contained language clearly stating that the parties were waiving or otherwise giving up their rights to a jury trial or other judicial proceeding. *See Arafa II*, 233 A.3d at 499–501. The first arbitration provision, in language that is notably missing from Defendant's comparison of the various provisions, expressly states that: "[t]he parties voluntarily agree to *waive any right to a trial by jury* in any suit filed hereunder and agree to adjudicate any dispute pursuant to [the Agreement to Arbitrate] below." *Id.* at 499 (emphasis added). The second arbitration provision reads, in relevant part: "BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS

15

AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATION AND *NOT BY WAY OF A COURT OR JURY TRIAL*." *Id.* at 501 (emphasis added).

The failure of the Arbitration Provision to mirror the language found enforceable in *Arafa II* is not fatal to Defendant's argument that the Provision should be enforced, especially in light of the New Jersey Supreme Court's statement that "no magical language is needed to accomplish a waiver of rights in an arbitration agreement." *Morgan*, 137 A.3d at 1180. What is fatal to Defendant's argument, however, is the lack of a clear and unambiguous waiver in the Arbitration Provision.

The Arbitration Provision does not inform the parties that there is a difference between resolving a dispute in arbitration and in a judicial forum. *Atalese*, 99 A.3d at 315. The Provision's distinction between settling disputes in small claims courts versus arbitration implies that there is a difference between the two processes, but nowhere does the Provision expressly state that disputes beyond the jurisdictional maximum for small claims court cannot be brought in court.

The key purpose of the waiver requirement is to ensure that a plaintiff knows he is giving up his right to bring his claims in court or to have a jury resolve the dispute. *Id.* at 316. Thus, while an arbitration provision need not use the words "waive" or "waiver," it still must contain some "general and sufficiently broad" language informing the plaintiff of the rights he is giving up. The language in the Arbitration Provision that comes closest to meeting this requirement is the language above the signature block informing the signee that the Contract contains a binding arbitration provision that affects his legal rights. (Doc. 17–2.) The Arbitration Provision, however, does not explain what these legal rights are (i.e., the right to bring suit in court), nor does it explain how these legal rights are affected by the Arbitration Provision (i.e., they are waived entirely).

16

Defendant argues that this language was sufficient to inform Plaintiff that he waived "certain rights" by agreeing to be bound by the Provision. (Doc. 252–1, 27.) In evaluating the enforceability of arbitration agreements, however, New Jersey law requires that the agreement do more than inform the parties that they have waived "certain rights"—the parties must be informed that they have waived their right to bring suit in a judicial forum. *Atalese*, 99 A.3d at 314.

**Atalese*'s Applicability to Non-Consumer Fraud Cases*

Defendant makes an additional argument that the New Jersey Supreme Court's holding in *Atalese* does not apply to the case at hand, citing an unpublished decision of the Superior Court of New Jersey. *1567 South Realty, LLC v. Strategic Contract Brands, Inc.*, No. A-0935-10T2, 2020 WL 3864974 (N.J. Super. Ct. App. Div. 2020). Defendant argues that the holding in *Atalese* is a "heightened standard" that is "only applicable in the context of consumer fraud cases." (Doc 252–1, 28.)

This argument fails for two reasons. First, this argument misrepresents the holding in *1567 South Realty*. The court in *1567 South Realty* did distinguish the commercial construction contract before it from the consumer fraud context of *Atalese*. *See 1567 South Realty*, No. A-0935-10T2, 2020 WL 3864974 at *2–3. However, this distinction was based on more than the labels of the two contracts. The court noted that the contract in *Atalese* involved an "average member of the public" who may not know that by agreeing to arbitrate, he was waiving his right to pursue his claims in the judicial system. *Id* at *2. The plaintiffs in *1567 South Realty*, however, were not average members of the public, and the contract was not a "consumer contract of adhesion where one party possessed superior bargaining power and was the more sophisticated party." *Id.* *3 (citation omitted). The court emphasized that the parties had an opportunity to negotiate the contract and

that the plaintiffs operated a car dealership and an LLC and negotiated contracts with customers "on a daily basis." *Id.* It was within this context—and not merely by distinguishing consumer fraud cases from all other cases—that the *1567 South Realty* court held that the "heightened standard" of *Atalese* did not apply. *See id.*

Second, if the Court were to apply the holding of *1567 South Realty* to the facts at hand, Plaintiff is much more similar to the "average member of the public" discussed in *Atalese* than he is to the business-owner plaintiffs in *1567 South Realty* who negotiated contracts daily. Plaintiff, an individual working as a delivery driver for Defendant, did not have the same bargaining power or level of legal sophistication as Subcontracting Concepts, Inc., the other party to the Contract and a contract management services company.

### IV.   CONCLUSION

For the reasons contained herein Judge Donio's June 30, 2021 order is **AFFIRMED**. An order follows.

Dated: 3/22/2022                                             /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge