IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| MICHAEL EASTERDAY, *individually and on behalf of all others similarly situated*, | : : : : |
| Plaintiff, | Civil No. 1:15-CV-07559 (RBK/AMD) |
| v. | **OPINION** |
| USPACK LOGISTICS LLC, | : : |
| Defendant. | : : |

**KUGLER**, United States District Judge:

This matter is before the Court on Plaintiff's unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 286 ("Mot.")). Plaintiff seeks preliminary approval of the parties' Settlement Agreement (ECF No. 286-1 ("Agreement")), settling wage and hour claims and an unjust enrichment claim under Federal Rule of Civil Procedure 23. Specifically, Plaintiff moves for an order (1) granting preliminary approval of the proposed class action settlement so that Plaintiff may initiate notice to the settlement class and (2) setting a date for a final fairness hearing 120 days after preliminary approval is granted. Defendant USPack Logistics LLC does not oppose the motion. For the reasons set forth below, the Court grants Plaintiff's motion for preliminary settlement approval but denies Plaintiff's request to set a date for a final fairness hearing because Plaintiff's proposed notice to the settlement class is insufficient to meet the requirements of due process and Federal Rule of Civil Procedure 23(c).

I.   Background

   A. Factual Allegations and Litigation History

1

This lawsuit began on October 19, 2015, when Plaintiff filed the Complaint in this matter, bringing claims against USPack under the New Jersey Wage Payment Law, N.J. Stat § 34:11-4.1, et seq. ("NJWPL"), the New Jersey Wage and Hour law, N.J. Stat. § 34:11-56a, et seq. ("NJWHL"), and New Jersey common law. (ECF No. 1). The claims arise out of Plaintiff's allegations that USPack classifies Plaintiff and other similarly situated individuals as "independent contractors," but the nature of the services and the manner in which the services are performed classify Plaintiff and other similarly situated individuals as employees, such that they are entitled to certain hour and wage protections under New Jersey law. (*Id.* ¶ 15). Plaintiff brought these claims on behalf of a proposed class of "all other persons who have worked for USPack as courier drivers operating in the State of New Jersey . . . during the applicable limitations period, and who have been classified as independent contractors rather than employees." (*Id.* ¶ 11).

USPack moved to compel arbitration and stay litigation on November 24, 2015. (ECF No. 8). On March 23, 2022, after the parties spent seven years litigating the arbitration issue, we entered an Order and Opinion affirming Magistrate Judge Donio's decision holding that the arbitration agreement in question was unenforceable. (ECF Nos. 255, 256). The parties agreed to participate in an alternative dispute resolution (ADR) process, which included a mediation session overseen by Dennis Clifford, Esq. (Mot. at 5). As a result of the ADR process, the parties reached a settlement agreement. (*Id.* at 6). On February 17, 2023, Plaintiff filed the instant unopposed motion, which presents the parties' proposed settlement agreement and Plaintiff's position on the law. (Mot. at 2).

B. Proposed Settlement

The proposed settlement class is defined as:

> [A]ll individuals who provided courier services for US Pack Logistics, LLC in New Jersey delivering, among other things, pharmaceuticals and related items, on behalf of Omnicare in at least one or more workweeks during the Relevant Time Period.

(Agreement ¶ 12(z)). "Relevant Time Period" is defined as January 1, 2013 through December 31, 2018. (*Id.* at ¶ 12(v)). Defendant has identified 367 individuals who qualify as a class member under this definition. (Agreement ¶ 12(z)).

The proposed settlement would establish a non-reversionary fund of $2,850,000.00, to be distributed as follows:

(1) $1,846,000.00 to be distributed to all participating class members;

(2) $980,000.00 in attorneys' fees and costs, being one-third of the gross settlement amount in attorneys' fees plus $30,000.00 in out-of-pocket costs;

(3) $10,000.00 service award to Plaintiff; and

(4) $14,000.00 in costs to be paid to Analytics Consulting, LLC for third-party settlement administration services.

(Agreement ¶ 12(k)–(o), (x); Mot. at 7). Each participating class member would receive a *pro rata* share of the settlement, in addition to a minimum payout of $100. (Mot. at 8). Assuming full participation of the 367 individuals eligible for participation in the class, Plaintiff estimates each class member will receive $5,000.00 on average. (*Id.*).

In exchange for this consideration, Plaintiff and the settlement class would release Defendant from all statutory or common law claims "arising from or related to the alleged misclassification of Plaintiff and the Settlement Class as independent contractors[.]" (Agreement ¶ 14; *see also* Mot. at 9). Defendant denies the allegations in the Action and does not admit any fault, liability, or wrongdoing, and further maintains the arbitration agreement signed by Plaintiff and the proposed class members is enforceable under applicable law. (Agreement ¶ 9).

The Court must determine whether to (1) provisionally certify the proposed settlement class under Federal Rule of Civil Procedure 23 and (2) preliminarily approve the parties' proposed Settlement Agreement.

## II. Certification of Settlement Class

Certification of a settlement class is "a judicially crafted procedure" which permits the Court to certify a class "for settlement purposes only, not for litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) ("*GM Trucks*"). To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 487 (3d Cir. 2017); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). The court may take the proposed settlement into consideration when evaluating whether these requirements are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Under Rule 23(a), the plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." *See Pet Food Prods.*, 629 F.3d at 341 n.14. Under Rule 23(b), certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are

commonly referred to as "predominance" and "superiority." *See Pet Food Prods.*, 629 F.3d at 341 n.14.

A plaintiff bears the burden of demonstrating that these requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is "[n]o minimum number of plaintiffs . . . required to maintain a suit as a class action[.]" *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001). However, numerosity is presumed satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Id.* at 226–27. Here, the parties have identified 367 individuals who qualify as class members under the class definition in the settlement agreement. (Agreement ¶ 12(z)). Therefore, the numerosity requirement is satisfied.

#### 2. Commonality/Predominance

When an action is brought under Rule 23(b)(3), the commonality requirement of Rule 23(a) "is subsumed by the predominance requirement" of Rule 23(b)(3). *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods.*, 521 U.S. at 627). To certify a class under Rule 23(b)(3), "questions of law or fact common to class members" must

"predominate over any questions affecting only individual members." This requirement is "far more demanding" than the commonality requirement set forth in Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24. "[T]he predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013). "[W]here individual stakes are high and disparities among class members [are] great," courts should be hesitant to find that predominance exists. *Amchem Prods.*, 521 U.S. at 625.

Plaintiff argues commonality is satisfied because the claims of Plaintiff and the proposed settlement class members raise the following common issues, among others: "(1) whether US Pack misclassified the delivery drivers; (2) whether Settlement Class Members were entitled to overtime compensation for their hours worked; (3) whether US Pack made deductions from the compensation of Settlement Class Members; and (4) whether US Pack was unjustly enriched by its pay practices." (Mot. at 12). These questions can be answered with "common, as opposed to individualized, evidence" because they concern Defendant's treatment of the class generally. *Hayes*, 725 F.3d at 359. Therefore, we are satisfied that the predominance and commonality requirements are met.

3. Typicality

"[T]he claims of the class representatives must be typical of the class as a whole." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The typicality requirement "is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiff[ ][has] incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Typicality is generally satisfied when "a plaintiff's claim

arises from the same event, practice or course of conduct that gives rise to the claims of the class members." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 598 (3d Cir. 2012). In this case, Plaintiff argues that his "claims for unlawful deductions,unpaid-overtime compensation, and unjust enrichment are typical of the claims of the Settlement Class." (Mot. at 14). We agree. Plaintiff's claims arise from the "practice or course of conduct that gives rise to the claims of the class members." *Marcus*, 687 F.3d at 598. Plaintiff, like the class members, was a delivery driver for Defendant who did not receive overtime compensation and other hour and wage benefits due to Defendant's alleged misclassification of Plaintiff, and the other class members, as independent contractors. Therefore, typicality is satisfied.

4. Adequacy

The fourth requirement of Rule 23(a) requires a plaintiff to show that as class representative, he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement has two components: (1) whether counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent. *See In re Cmty. Bank of N. Va. Mortgage Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015); *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) ("*Prudential II*"). In determining the adequacy of counsel, a court should consider the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

No adequacy issues exist here. Class counsel has extensive expertise in wage and hour class actions, and specifically in independent contractor misclassification claims. (ECF No. 286-2 ¶¶ 5–9; ECF No. 286-3 ¶¶ 6–7). Counsel has also expended significant resources and effort in prosecuting this action over the course of nearly eight years. We therefore find that class counsel is qualified, experienced, and able to conduct the litigation. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *Prudential II*, 148 F.3d at 312. There are no obvious conflicts between the representative Plaintiff and the class members. Further, Plaintiff and the class members possess the same wage and hour claims against Defendant, and thus have a shared interest in the outcome of the litigation. Therefore, adequacy of class counsel and adequacy of the named Plaintiff are satisfied.

### B. Rule 23(b)(3)

As the proposed settlement class meets the requirements of Rule 23(a), the Court now turns to Rule 23(b), which imposes two additional requirements: "predominance" and "superiority." *See* Fed. R. Civ. P. 23(b)(3); *Pet Food Prods.*, 629 F.3d at 341 n.14. As discussed above, predominance is satisfied here. Superiority requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In making this determination a court may consider (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *Id.* This list is not exhaustive. *Amchem*, 521 U.S. at 615–16. A court may consider any matter relevant "to balance, in terms of fairness and efficiency, the merits of a

8

class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996).

Plaintiff argues that a class action is superior to "a multiplicity of individual and duplicative proceedings" because of the "difficulty of finding legal representation and filing claims on an individual basis" in this case. (Mot. at 15). Where individual claims are modest, class members' interests in bringing individual actions is low. *See Prudential II*, 148 F.3d at 314. Here, each individual class member's claim is likely to be modest such that the benefit of bringing a claim individually would be low. We agree with Plaintiff that the superiority requirement is met.

Because we find the Rule 23(a) and (b) factors are satisfied, we will grant provisionary certification of the settlement class.

### III. Preliminary Approval of Proposed Class Action Settlement

Federal Rule of Civil Procedure 23(e) provides "the claims . . . of a certified class may be settled . . . only with the court's approval." "Even if it has satisfied the requirements for certification under Rule 23, a class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate." *Prudential II*, 148 F.3d at 316 (quotation omitted). Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *see also Manual for Complex Litigation, Fourth* § 21.632 (2004). At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement. *Id.*; Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5). At the second stage, after class members are notified of

the settlement, the Court holds a formal fairness hearing where class members may object to the settlement. *See* Fed. R. Civ. P. 23(e); *Manual for Complex Litigation, Fourth* §§ 21.633–21.634. If the Court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). A court considering final approval of a class action settlement must evaluate the settlement under the factors set out in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

At the preliminary fairness evaluation stage, the court must determine whether the proposed settlement falls "within the range of fairness, reasonableness and adequacy" required by Rule 23(e). *In re Amino Acid Lysine Antitrust Litigation*, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996). A proposed settlement "falls within the 'range of possible approval'" so long as "there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014). Generally, preliminary approval should be granted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The standards for preliminary approval are met in this case. The proposed settlement appears to be the result of serious arm's-length negotiations between counsel for Plaintiff and Defendant. The parties achieved settlement after egnaging in substantial discovery as to merits and damages, followed by an all-day mediation session with an experienced wage and hour mediator.

(Mot. at 5, 16, 18). The settlement agreement secures substantial recoveries for the class members, with a projected award of approximately $5000.00 on average, while Plaintiff's counsel represents that the attorneys' fee award is "substantially less" than "awards approved in similar class action settlements." (Mot. at 19). With a modest service award of $10,000.00 to the named Plaintiff, the agreement does not appear to unreasonably favor the class representative or any segment of the class. The Court finds the proposed settlement agreement "falls within the range" of fairness, reasonableness, and adequacy required by Rule 23(e). Therefore, we will grant preliminary approval of the proposed settlement agreement.

### IV.     Approval of Class Notice

After preliminarily approving a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Class notice is subject to due process requirements, *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985), and must comply with the method and content guidelines in Rule 23(c)(2) and 23(e)(1). As to method, in a Rule 23(b)(3) class action, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Where settlement notice is sent simultaneously with notice of the class action itself, the content of the notice must be sufficient to inform settlement class members that the settlement agreement is not a "fait accompli" and that class members have the opportunity to be heard, to object to the settlement, and to opt out of the settlement. *See GM Trucks*, 55 F.3d at 789 (citing *Mars Steel v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 680–81 (7th Cir. 1987)). The notice must "clearly and concisely state in plain, easily understood language":

    i.   the nature of the action;
    ii.  the definition of the class certified;

   iii. the class claims, issues, or defenses;
   iv. that a class member may enter an appearance through an attorney if the member so desires;
   v. that the court will exclude from the class any member who requests exclusion;
   vi. the time and manner for requesting exclusion; and
   vii. the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Due process requires notification to the class "(1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997) ("*Prudential I*"). Although the notice "need not be unduly specific," *In re Diet Drugs*, 226 F.R.D. at 518 (E.D. Pa. 2005), it must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* (citing *In re Diet Drugs*, 369 F.3d 293, 308–10 (3d Cir. 2004)).

  The proposed method of notice is "the best notice practicable under the circumstances." The Agreement provides that the third-party settlement administrator will be responsible for preparing and mailing notice to all settlement class members. (Agreement ¶ 17(b))). Within ten business days after this Court enters its preliminary approval of the proposed settlement, the Defendant will provide the settlement administrator a file containing the names, last known addresses, last known telephone numbers, and last known email addresses of each class member. (*Id.* ¶ 17(c)). Within fifteen days after receiving the file, the settlement administrator will mail the settlement notice to settlement class members by U.S. First Class Mail and by email. (*Id.* ¶ 17(f)). Notice by first-class mail is regularly deemed adequate notice under Rule 23(c)(2). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (individual notice is best notice practicable); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D.Pa. 1983) (individual notice by first-class

mail is "best notice practicable" under 23(c)(2)); *Peil v. Nat'l Semiconductor Corp.*, 86 F.R.D. 357, 375 (E.D.Pa. 1980) (best notice practicable is by first class mailing).

While the method of the proposed notice passes muster, the proposed notice does not contain all the content required by due process and Rule 23(c)(2)(B). The notice clearly and concisely informs settlement class members of the nature of the litigation, the definition of the class, the claims alleged against the Defendant, the settlement's general terms, the option to be excluded from or object to the settlement, the time and manner for requesting exclusion and for objecting to the settlement, the binding effect of the settlement if it is approved, and the option to be heard at the final fairness hearing. However, the notice neglects to inform class members that they may enter an appearance through an attorney if they would like to do so, nor does the notice inform class members of methods by which they can read the complete settlement agreement, including the availability of the settlement agreement in court files. Furthermore, the notice presents the settlement as a "fait accompli," informing settlement class members that "the lawsuit has been settled" in the first section of the notice form. *See GM Trucks*, 55 F.3d at 789. This language may discourage class members who otherwise would have objected to the settlement from exercising their right to do so. The notice should make clear to class members that the settlement has only been preliminarily approved, but will not be finally approved until all class members have an opportunity to be heard. Because of these failings, the proposed settlement notice does not satisfy due process or the requirements of Rule 23(c)(2)(B), and therefore we cannot direct notice at this time. Because we are unable to direct notice to the settlement class, we must deny Plaintiff's request to schedule a final fairness hearing.

V.      **Conclusion**

For the foregoing reasons, Plaintiff's unopposed motion for provisional certification of a settlement class and preliminary approval of the proposed class settlement agreement is **GRANTED**. However, because the proposed notice to the settlement class does not meet the requirements of due process and Federal Rule of Civil Procedure 23(c), Plaintiff's request to schedule a final fairness hearing is **DENIED**. An order follows.

Dated: 7/6/2023                           s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge